MORGAN, LEWIS & BOCKIUS LLP
MICHAEL W. STEINBERG, *Pro Hac Vice* Pending
1111 Pennsylvania Avenue, NW
Washington, DC  20004
Tel: 202.739.3000
Fax: 202.739.3001
E-mail:  msteinberg@morganlewis.com

*Attorney for Intervenors Superfund Settlements Project, RCRA Corrective Action Project, and American Petroleum Institute*

MORGAN, LEWIS & BOCKIUS LLP
BENJAMIN P. SMITH, State Bar No. 197551
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
E-mail:  bsmith@morganlewis.com

Local Co-Counsel for Intervenors

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SIERRA CLUB, GREAT BASIN RESOURCE WATCH, AMIGOS BRAVOS, and IDAHO CONSERVATION LEAGUE,<br><br>Plaintiffs,<br><br>vs.<br><br>STEPHEN JOHNSON, Administrator, United States Environmental Protection Agency, and MARY E. PETERS, Secretary, United States Department of Transportation,<br><br>Defendants. | Case No. C-08-01409-WHA<br><br>**PROPOSED INTERVENORS SUPERFUND SETTLEMENTS PROJECT, RCRA CORRECTIVE ACTION PROJECT, AND AMERICAN PETROLEUM INSTITUTES' NOTICE OF MOTION AND MOTION TO INTERVENE; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   May 22, 2008<br>Time:  8:00 a.m.<br>Place:  Courtroom 9, 19th Floor<br>Judge: The Honorable William H. Alsup |

# NOTICE OF MOTION AND MOTION TO INTERVENE

TO ALL PARTIES AND TO THE HONORABLE COURT:

**PLEASE TAKE NOTICE** that on May 22, 2008, at 8:00 a.m., or as soon thereafter as the matter may be heard before the Honorable William H. Alsup, District Judge of the United States District Court for the Northern District of California – San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, the RCRA Corrective Action Project ("RCAP"), Superfund Settlements Project ("SSP"), and the American Petroleum Institute ("API") (collectively here "movants," "applicants," or "proposed intervenors"), on behalf of their constituent member companies, will and hereby do move for leave to intervene in the above-captioned proceeding.

Proposed intervenors make this motion pursuant to Rules 24(a)(2) and 24(b)(2) of the Federal Rules of Civil Procedure, and Section 113(i) of the Comprehensive Environmental Response, Conservation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(i), on the ground that the proposed intervenors have a direct, substantial, and legally cognizable interest in the outcome of this litigation that may be impaired or impeded in a practical sense by the determinations that may be made in this action.

This motion is based on this Notice of Motion and Motion; the following Memorandum of Points and Authorities; the pleadings and records in this action; and such other materials and argument as may be presented to the Court at or prior to the hearing.

///
///
///
///
///
///
///
///
///

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

On November 6, 2007, Sierra Club, Amigos Bravos, Great Basin Mine Watch, and Idaho Conservation League ("plaintiffs") submitted a notice letter to the United States Environmental Protection Agency ("EPA") as a prerequisite to filing a citizen suit under CERCLA § 310(e), 42 U.S.C. § 9659(e), regarding EPA's alleged failure under CERCLA § 108(b)(1) to promulgate regulations requiring businesses that handle hazardous substances to prove their ability to pay for the cleanup of spills or other environmental contamination that could result from their operations.

On March 11, 2008, plaintiffs filed the above-captioned action against EPA pursuant to CERCLA's citizen suit provision, 42 U.S.C. § 9659(e). In this suit, plaintiffs seek, among other things, to compel EPA to promulgate and adopt such financial assurance regulations under Section 108(b)(1). *See* Complaint at 6.

## II. STANDING TO INTERVENE

The Court of Appeals for the Ninth Circuit has not yet resolved whether, in addition to satisfying the elements of Rule 24, a party seeking to intervene as of right also must demonstrate that it has Article III standing. *Prete v. Bradbury*, 438 F.3d 949, 956 n.8 (9th Cir. 2006). In any case, there is no real dispute that applicants have standing here.

As the plain text of Rule 24 indicates, a proposed intervenor need only demonstrate "an interest" in the litigation. In light of this language, those Courts of Appeals that have held that an applicant must demonstrate Article III standing have held that "the question is not whether the applicable law assigns the prospective intervenor a cause of action," but rather "whether the individual may intervene in an already pending cause of action." *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). *See also Smuck v. Hobson*, 408 F.2d 175, 179 (D.C. Cir. 1969) (en banc) ("In the context of intervention the question is not whether a lawsuit should be begun, but whether already initiated litigation should be extended to include additional parties."). Accordingly, a party satisfies the Article III standing requirement for intervention where it demonstrates a "concrete and cognizable interest" in the litigation. *Jones*, 348 F.3d at

///

1019. *See also S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (an intervenor need show only a "legally protectable" interest to demonstrate Article III standing).

The proposed intervenors here certainly satisfy this requirement, as applicants' constituent member companies have a definite and legally protectable interest in the outcome of this litigation. The RCRA Corrective Action Project is a non-profit organization formed 20 years ago as a vehicle for its member companies to provide constructive input to EPA and state agencies on critical policy issues affecting the cleanup of contaminated sites. The members of RCAP are companies from diverse sectors of American business and industry that own and operate hazardous waste facilities and, therefore, have extensive experience cleaning up contaminated sites. In particular, many of RCAP's member companies operate facilities, or are otherwise involved at sites, that would be subject to the regulations being sought in this action. As such, if plaintiffs were to prevail in this action, many of RCAP's member companies likely would be subject to new financial assurance regulations. In meeting those requirements, RCAP's member companies likely would be forced to assume with new and significant financial burdens for numerous facilities across the country.

The Superfund Settlements Project also is a non-profit association of major corporations with substantial experience in operating and cleaning up contaminated sites. In fact, SSP's member companies have spent more than $6 billion on site cleanups and site studies to date. As with the member companies of RCAP, if plaintiffs prevail here, SSP's member companies likely would be subject to whatever financial assurance guidelines EPA adopts, and thus also would be subject to significant financial burdens for their activities at numerous facilities across the country.

The American Petroleum Institute is a nationwide, not-for-profit trade association representing nearly 400 member companies engaged in all aspects of the oil and natural gas industry, including exploration, production, transportation, refining, distribution, and marketing. API frequently represents its members on important legal and policy matters before the courts, agencies, and legislative bodies. API's members are or have been directly involved in the remediation of numerous sites under CERCLA, often at great economic cost. As such, API's

1  member companies have a strong interest in any financial assurance obligations plaintiffs seek to
2  have promulgated and imposed under CERCLA.

3  Applicants' member companies, therefore, have a direct and significant interest in the
4  outcome of this litigation; and it is an interest that the federal courts repeatedly have found
5  satisfies the standing requirement for intervention.  *See, e.g.*, *Sagebrush Rebellion, Inc. v. Watt*,
6  713 F.2d 525, 528 (9th Cir. 1983) (holding that a public interest group that has supported a
7  measure has a "significant protectable interest" in defending the legality of the measure); *Fund*
8  *for Animals, Inc. v. Norton*, 322 F.3d 728, 733 (D.C. Cir. 2003) (permitting intervention in suit
9  seeking listing of an animal on the Endangered Species List by an organization whose member
10 companies would be financially impacted by such a regulatory action); *Military Toxics Project v.*
11 *EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (permitting intervention in suit seeking review of the
12 Military Munitions Rule promulgated by EPA providing an exemption to RCRA regulations for
13 used or fired, on-range munitions by an organization whose members would be affected by such
14 an action).

15 As the courts in these cases have recognized, proposed intervenors plainly have standing
16 to intervene because their member companies will be subjected to significant financial burden if
17 the disputed regulations are adopted, and thus those companies have a direct and legally
18 cognizable interest in not being subject to such regulations.  Because the member companies of
19 the proposed intervenors would suffer concrete injury if the Court were to grant the relief that
20 plaintiffs seek in this litigation, applicants have Article III standing for purposes of intervention.[1]

21 **III.    INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2) AND CERCLA § 113(i)**

22 The Ninth Circuit has held that a prospective intervenor must be permitted to intervene as
23 of right under Rule 24(a) if the applicant satisfies the elements of the four-part test set out in
24 *Southwest Center For Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001):

---

[1] There also is no real question that, if the member companies of the proposed intervenors have standing to intervene, then RCAP, SSP, and API have standing to intervene on their behalf. *See Military Toxics Project*, 146 F.3d at 954-55 ("CMA [Chemical Manufacturers Association] members would suffer concrete injury if the court grants the relief the petitioners seek; they would therefore have standing to intervene in their own right, and we agree with the litigants that the CMA has standing to intervene on their behalf in support of the EPA.").

> (1) the application for intervention must be timely; (2) the applicant must have a 'significantly protectable' interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*See also DBSI/TRI IV Ltd. P'ship v. United States*, 465 F.3d 1031, 1037 (9th Cir. 2006). Prospective intervenors satisfy all four *Berg* elements for intervention as of right.

### A.   Timeliness

The Ninth Circuit has held that timeliness is a flexible concept, the determination of which is left to the district court's discretion. *Dilks v. Aloha Airlines*, 642 F.2d 1155, 1156 (9th Cir. 1981). In determining whether an application for intervention is timely, courts have concluded that "timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. AT&T Co.*, 642 F.2d 1285, 1295 (D.C. Cir. 1980).

There is little question that applicants' Motion for Intervention is timely as it was filed within 30 days of the complaint, and before EPA filed its answer—both factors that courts have found to be effectively dispositive of the timeliness inquiry. *See, e.g.*, *Fund for Animals*, 322 F.3d at 735. There are no other factors that weigh against a finding of timeliness.

### B.   Interest and Impairment

The Ninth Circuit has held that the "significantly protectable interest" test does not establish "a clear-cut or bright-line rule," *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002), but rather requires a court to make "a practical, threshold inquiry." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). An applicant seeking to intervene need not show that "the interest he asserts is one that is protected by statute under which litigation is brought." *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993). Indeed, the Ninth Circuit has made clear that "[n]o specific legal or equitable interest need be established." *Greene*, 996 F.2d at 976. Rather, "[i]t is generally enough that the interest [asserted] is protectable under some

1  law, and that there is a relationship between the legally protected interest and the claims at issue."
2  *Sierra Club*, 995 F.2d at 1484; *see also So. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803, *modified*
3  *on other grounds*, 353 F.3d 648 (9th Cir. 2003).

4        There is no question that applicants' member companies have a direct, substantial, and
5  legally cognizable interest in the outcome of this proceeding.[2]  Applicants' interests here lie in
6  tailoring any rulemaking proceedings to the specific requirements of the statute, preserving
7  agency discretion on the many issues that are left open by the statute, avoiding the imposition of
8  unnecessary or duplicative requirements on the regulated industries, and assuring that any
9  rulemaking schedule allow adequate time for agency deliberation on these complex and important
10 issues.

11       Nor is there any real dispute that, if plaintiffs were to prevail in this matter, the interests of
12 applicants' member companies, "as a practical matter," would be impaired or impeded as those
13 companies would be exposed to significant financial burdens and other regulatory obligations.
14 As courts consistently have recognized, a company's interest in not being subject to regulations
15 that may have a direct financial impact on the company constitutes a cognizable and legally
16 protectable interest, and one that is sufficient to support intervention under Rule 24(a).  *See Fund*
17 *for Animals*, 322 F.3d at 733; *Berg*, 268 F.3d at 822 ("if an absentee would be substantially
18 affected in a practical sense by the determination made in an action, he should, as a general rule,
19 be entitled to intervene" (quotations and citations omitted)).

20       In light of such holdings, applicants' member companies plainly have a "protectable"
21 interest that may be impeded or impaired by the relief being sought by plaintiffs in this action.
22 Applicants thus should be permitted to intervene to protect those interests.

23       **C.**    **Adequacy of Representation**

24       Due to the nearly identical language between the two provisions, the Ninth Circuit has
25 held that the same standards that apply to intervention under Rule 24(a)(2) also apply to

---

[2] Because the proposed intervenors have established Article III standing, such a showing necessarily is sufficient to satisfy Rule 24's interest requirement. *Jones*, 348 F.3d at 1018 ("because [intervenor] has suffered a cognizable injury sufficient to establish Article III standing, she also has the requisite interest under Rule 24(a)(2)"); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir. 1998) (holding that satisfying constitutional standing requirements demonstrates the existence of a legally protected interest for purposes of Rule 24(a)).

intervention under CERCLA § 113(i), "with the exception that the burden to show that existing parties adequately represent the prospective intervenor's interests is allocated to the President or the State under § 113(i), whereas under [Rule] 24(a)(2) the party seeking to intervene has the burden to show that no existing party adequately represents its interests." *Cal. Dep't of Toxic Substances Control v. Commercial Realty Project*, 309 F.3d 1113, 1118-19 (9th Cir. 2002). Consequently, the burden to demonstrate adequacy of representation falls on the government. 42 U.S.C. § 9613(i). *See United States v. Union Elec. Co.*, 64 F.3d 1152, 1157 (8th Cir. 1995) ("The statute places the burden on the President or the State to show that the potential intervenor's interest is adequately represented by existing parties . . .").

EPA can make no such showing here as EPA does not adequately represent the interests of the member companies of proposed intervenors. CERCLA imposes on the Administrator the duty to serve and pursue interests that are entirely distinct from – and potentially at odds with – those of movants' member companies. As a result of the government's divergent interests in this area, EPA may pursue litigation or settlement strategies that would undermine movants' cognizable interests in this matter. In such cases, courts have concluded that intervention under Rule 24(a) is warranted and appropriate. *See, e.g.*, *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538-39 (1972); *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), *rev'd on other grounds*, 480 U.S. 370 (1987).

Even under Rule 24(a), the adequacy of representation inquiry merely requires that an applicant show that representation of his interest "*may be*" inadequate, and the burden of making that showing should be treated as "minimal." *Trbovich*, 404 U.S. at 538 n.10 ("the burden of making a showing [of inadequate representation] should be minimal" (citing 3B J. Moore, Federal Practice ¶ 24.09-1 [4] (1969))). Indeed, in determining whether a party will adequately represent a proposed intervenor's interests, the Ninth Circuit considers "several factors, including whether [a present party] will undoubtedly make all of the intervenor's arguments, whether [a present party] is capable of and willing to make such arguments, and whether the intervenor offers a necessary element to the proceedings that would be neglected." *Sagebrush Rebellion*, 713 F.2d at 528. The Ninth Circuit has made clear that the burden of showing inadequacy of representation is

minimal and "is satisfied if the applicant shows that representation of its interests 'may be' inadequate . . . ."[3] *Id.* (internal citations omitted). *See also Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1498 (9th Cir. 1995).

Given EPA's distinct interests in this matter, and the fact that applicants may offer elements to the proceeding that other parties would neglect, movants satisfy the minimal burden for intervention.

## IV.  PERMISSIVE INTERVENTION UNDER RULE 24(b)(2)

Alternatively, the Court should permit movants to intervene under Rule 24(b). Pursuant to Rule 24(b)(2), intervention should be granted where an applicant intends to advance claims that share a question of law or fact in common with the underlying action and so long as permitting intervention will not unduly delay or prejudice the rights of the original parties. *See* Fed. R. Civ. P. 24(b). Both of these elements are satisfied here.

First, the claims to be advanced by movants plainly share questions of fact and law in common with the underlying action. Because their member companies anticipate being among those companies subject to the new financial assurance regulations being sought here, applicants have an interest in tailoring any rulemaking proceedings to the specific requirements of the statute, preserving agency discretion on the many issues that are left open by the statute, avoiding the imposition of unnecessary or duplicative requirements on the regulated industries, and assuring that any rulemaking schedule allow adequate time for agency deliberation on these complex and important issues. As such, intervenors' claims touch directly upon the central issues

---

[3]  Even where a party seeks to intervene on the side of the government, the Ninth Circuit has found this element satisfied where the intervenor "might bring a perspective materially different from that of the [government]." *Prete*, 438 F.3d at 957 (discussing *Sagebrush Rebellion*, 713 F.2d at 528). Indeed, because applicants and defendants do not necessarily share "the same ultimate objective," there is no presumption in favor of adequacy of representation. *See League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297, 1297-1301 (9th Cir. 1997). In clarifying the "same ultimate objective" standard, the Ninth Circuit has held that the applicant's interest must be "identical to that of one of the present parties." *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). Other jurisdictions have reached the same conclusion. See *Kan. Pub. Employees Ret. Sys. v. Reimer & Koger Assocs.*, 60 F.3d 1304, 1308-09 (8th Cir. 1995) (finding a presumption of adequate representation arises only where the proposed intervenor's interests are identical to those of an existing party). Conversely, where the interests of the proposed intervenor and a party "are disparate, even though directed at a common legal goal, . . . intervention is appropriate." *Id.* Thus, absent a complete identity of interests, the minimal burden standard controls. *See United States v. Stringfellow*, 783 F.2d 821, 828 (9th Cir. 1986), *rev'd on other grounds*, 480 U.S. 370 (1987). The possibility that applicants' interests may be "bargained away" during settlement means that there is not the requisite identity of interests that would give rise to a presumption of adequacy of representation. *Id.*

underlying this litigation, and thus support granting leave to intervene. *See Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002) (permitting intervention under Rule 24(b) is appropriate where the "the magnitude of [the] case is such that [an applicant's] intervention will contribute to the equitable resolution of [the] case"). Intervention also is warranted because movants will provide valuable insight into the actual, real-world implications of accepting plaintiffs' proposal. *See Garza v. County of Los Angeles*, 918 F.2d 763, 777 (9th Cir. 1990) (intervenors' knowledge and experience may support a grant of permissive intervention). *See also Earth Island Inst. v. U.S. Forest Serv.*, No. 2:05-cv-1608-MCE-GGH, 2006 U.S. Dist. LEXIS 66758, at *6 (E.D. Cal. Sept. 8, 2006) ("Ensuring that all competing interests are heard will contribute to the just and equitable resolution of this case.").

As to the remaining element, intervention will not delay or unduly complicate this action. Proposed intervenors fully anticipate making timely submissions. Moreover, permitting intervention will assist this Court by providing a valuable perspective regarding the issues presented. Indeed, because their member companies will be able to provide unique insight into the implications of the regulations being sought by plaintiffs, permitting movants to intervene "might produce efficiency gains." *United States v. ABA*, 118 F.3d 776, 782 (D.C. Cir. 1997).

## CONCLUSION

WHEREFORE, for the foregoing reasons, RCAP, SSP, and API respectfully request that this Court grant them leave to intervene on behalf of their constituent member companies in the above-captioned proceeding, with the full rights attendant thereto.

///
///
///
///
///
///
///
///

Dated: April 10, 2008

Respectfully submitted,

   /s/ Benjamin P. Smith
BENJAMIN P. SMITH, State Bar No. 197551
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
E-mail: bsmith@morganlewis.com

*Local Co-Counsel for Intervenors Superfund Settlements Project, RCRA Corrective Action Project, and American Petroleum Institute*

MICHAEL W. STEINBERG, *Pro Hac Vice* Pending
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., N.W.
Washington, D.C. 20004
Telephone: (202) 739-5141
Facsimile: (202) 739-3001

*Attorney for Intervenors Superfund Settlements Project, RCRA Corrective Action Project, and American Petroleum Institute*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

9

RCAP ET AL'S NOTICE OF MOTION;
MOTION TO INTERVENE; MEMO P&A
No. C-08-01409-WHA