IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SIERRA CLUB, GREAT BASIN RESOURCE WATCH, AMIGOS BRAVOS, and IDAHO CONSERVATION LEAGUE,

    Plaintiffs,

v.

STEPHEN L. JOHNSON, Administrator, United States Environmental Protection Agency, and MARY E. PETERS, Secretary, United States Department of Transportation,

    Defendants,

and

SUPERFUND SETTLEMENTS PROJECT, RCRA CORRECTIVE ACTION PROJECT, and AMERICAN PETROLEUM INSTITUTES,

    Defendant-Intervenors.

No. C 08-01409 WHA

**ORDER DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND ORDER TO SHOW CAUSE**

**INTRODUCTION**

In this environmental action alleging failure to perform nondiscretionary duties required by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the federal defendants move to dismiss for lack of subject-matter jurisdiction or, in the alternative, for improper venue. For the reasons stated below, defendants' motion is **DENIED IN PART**. Subject-matter jurisdiction is proper over plaintiffs' CERCLA claim.

With respect to plaintiffs' Administrative Procedure Act claim, the parties are hereby ordered to show cause within fourteen days as to whether that claim is duplicative of the CERCLA claim.

**STATEMENT**

Plaintiffs Sierra Club, Great Basin Resource Watch, Amigos Bravos, and Idaho Conservation League are nonprofit organizations dedicated to environmental protection. The lead plaintiff in this action is Sierra Club, a California nonprofit corporation headquartered in San Francisco. Sierra Club has over 700,000 members in all fifty states and the District of Columbia. Defendants are Stephen L. Johnson, sued in his official capacity as Administrator of the Environmental Protection Agency, and Mary E. Peters, sued in her official capacity as Secretary of the Department of Transportation.

Congress enacted CERCLA, also known as "Superfund," in 1980 to address the cleanup of improperly disposed hazardous substances. Section 108(b) mandated that the President promulgate regulations to ensure that facilities involved in any way with hazardous substances would remain financially responsible for cleaning up any substances that were improperly disposed. 42 U.S.C. 9608(b).

By executive order, all functions vested in the President under Section 108(b) were delegated to the Administrator of the EPA, except for functions having to do with transportation-related facilities, which were delegated to the Secretary of the DOT. Those officials were allegedly required by Section 108(b) to: (i) publish notice of the classes of facilities for which financial responsibility requirements would be required not later than three years after December 11, 1980; (ii) promulgate requirements that classes of facilities establish and maintain evidence of financial responsibility consistent with the degree and duration of risk associated with the production, transportation, treatment, storage, or disposal of hazardous substances beginning not earlier than five years after December 11, 1980; and (iii) incrementally impose financial responsibility requirements as quickly as can reasonably be achieved but in no event more than four years after the date of promulgation. *See* 42 U.S.C. 9608(b)(1), (b)(3). According to plaintiffs, defendants have taken none of these steps.

Plaintiffs have two claims for relief. The first arises under Section 310(a)(2) of CERCLA, codified as 42 U.S.C. 9659(a)(2), which authorizes citizen suits against federal officials for failure to perform any nondiscretionary act or duty mandated by CERCLA. Plaintiffs allege that defendants' failure to issue the regulations that CERCLA requires constitutes a "failure of the President or of such other officer to perform any act or duty under this chapter . . . which is not discretionary with the President or such other officer" within the meaning of Section 310(a)(2). That failure, plaintiffs claim, "increases the likelihood that plaintiffs' members and their environment will be exposed to unremediated releases of hazardous substances" (Compl. ¶ 10).

Plaintiffs' second claim for relief arises under the Administrative Procedure Act, which grants courts the jurisdiction to review agency action or failure to act. Defendants' failure to issue regulations, plaintiffs allege, constitutes "agency action unlawfully withheld or unreasonably delayed," in violation of Section 706(1) of the APA (Compl. ¶ 41). Defendants' action is unlawfully withheld, according to plaintiffs, because it is required by CERCLA, and it has been unreasonably delayed because "a delay of over 20 years is inherently unreasonable, particularly in light of the importance Congress has assigned to the protection of people and the environment from hazardous substances" (*ibid.*).

Plaintiffs brought this action in the Northern District of California because Sierra Club is headquartered in San Francisco. The federal defendants move to dismiss the action for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Defendants argue that proper venue is an express condition of the government's waiver of sovereign immunity for suits brought under CERCLA Section 310(a)(2) and that venue is proper only in the District of Columbia. Plaintiffs' APA claim, defendants argue, must also be dismissed for lack of subject-matter jurisdiction because that claim can only be brought in the Court of Appeals for the District of Columbia Circuit.

# ANALYSIS

## 1. THE CERCLA CLAIM.

The special venue provision that governs citizen suits for failure by an executive officer to perform a nondiscretionary duty is Section 310(b)(2), and it reads as follows:

> Any action brought under subsection (a)(2) of this section may be brought in the United States District Court for the District of Columbia.

42 U.S.C. 9659(b)(2). The issue is whether "may be brought" is permissive. The federal defendants argue that, by specifying the District Court for the District of Columbia, Congress mandated that Section 310(a)(2) suits be filed *only* there. Defendants further contend that the provision must be narrowly construed in favor of the government because it constitutes a waiver of sovereign immunity. *See, e.g.*, *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990).[1]

In *Exxon Corp. v. Hunt*, 475 U.S. 355, 363 (1986), the Supreme Court noted that Section 114(c) of CERCLA was "not a model of legislative draftsmanship." So too as for Section 310(b)(2). In the absence of convincing legislative history to the contrary, however, this order cannot ignore the plain, permissive meaning of the word *may*.

### A. Prior Caselaw.

How to interpret "may be brought" in Section 310(b)(2) is an issue of first impression in this circuit. Elsewhere, the decisions are divided. The District Court for the Southern District of New York and the Second Circuit have both found that Section 310(b)(2) restricts venue to the District of Columbia. *See Benzman v. Whitman*, 523 F.3d 119, 133 n.5 (2d Cir. 2008); *Benzman v. Whitman*, 2006 WL 250527, at *29 (S.D.N.Y. 2006). The issue was not central to either opinion, however, nor does it appear to have been briefed by the parties.[2]

---

[1] At the same time, this order must be careful not to "narrow the waiver that Congress intended." *United States v. Trident Seafoods Corp.*, 92 F.3d 855, 864 (9th Cir. 1996). Because strictly construing Section 310(b)(2) in favor of the EPA would not change this Court's analysis of Section 310(b)(2), this order need not address whether or not the provision should be strictly construed.

[2] The district court order contained one sentence noting that CERCLA "restricts venue for actions under subsection (a)(2) to the United States District Court for the District of Columbia." *Benzman,* 2006 WL 250527, at *29. The Second Circuit opinion contained a footnote reading as follows: "The Plaintiffs apparently used subsection (1) rather than subsection (2) because broader relief is available in suits under subsection (1), *see* 42 U.S.C. § 9659(c), and suits under subsection (2) must be brought in the District Court for the District of

4

In *Davis v. EPA*, 194 Fed. Appx. 523, 525 (10th Cir. 2006), the Tenth Circuit addressed the issue more directly, holding that the use of the word *may* in Section 310(b)(2) was indicative of Congress's intent *not* to restrict venue solely to the District of Columbia. The court noted that Section 310(b)(1), the venue provision for suits against private actors, specifies that such suits "*shall* be brought in the district court for the district in which the alleged violation occurred" and reasoned that Congress would also have used the word *shall* in Section 310(b)(2) if it meant to restrict venue in that provision. *Id.* at 526. The court further emphasized that "citizen-suits against the government have been regularly litigated outside the District of Columbia," citing four such decisions.[3] *Ibid.* While this order appreciates that *Davis* is the only decision to have addressed the interpretation of Section 310(b)(2) at any length, it also notes that *Davis* is an unpublished decision. Additionally, defendants point out that *Davis* was decided without the benefit of briefing by the government.

### B. Congressional Intent.

As both parties note, there are two kinds of venue statutes: the general venue provisions of 28 U.S.C. 1391 and the special venue provisions in statutes like CERCLA. Plaintiffs contend that the CERCLA special venue provision at issue, Section 310(b)(2), should be read to supplement, rather than supplant, the general venue provision for actions against federal officials, 28 U.S.C. 1391(e). Section 1391(e) allows a plaintiff to file an action against a federal official: (i) where the defendant resides; (ii) where a substantial part of the events or omissions giving rise to the claim occurred; or (iii) where any plaintiff resides. The purpose of Section 1391(e) is to "provide nationwide venue for the convenience of individual plaintiffs in actions . . . against the government." *Stafford v. Briggs*, 444 U.S. 527, 541–42 (1980).

In *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1409 (9th Cir. 1989), the Ninth Circuit noted that "as a general matter, courts have interpreted special venue provisions to

---

Columbia, *see id.* § (b)(2)." *Benzman*, 523 F.3d at 133 n.5.

[3] *See Schalk v. Reilly*, 900 F.2d 1091 (7th Cir. 1990); *City of Moses Lake v. United States*, 416 F. Supp. 2d 1015 (E.D. Wash. 2005); *WorkWorks I, Inc. v. U.S. Dep't of Army*, 22 F. Supp. 2d 1204 (D. Colo. 1998); *Conservation Law Found. of New England, Inc. v. Browner*, 840 F. Supp. 171 (D. Mass. 1993). Defendants note that venue does not appear to have been contested in any of these cases.

5

supplement, rather than preempt, general venue statutes." *Go-Video*, in turn, relied on *Pure Oil v. Suarez*, 384 U.S. 202, 205–207 (1966), in which the Supreme Court applied the general venue statute, even though the act under which plaintiff was suing contained a more restrictive venue provision. The Supreme Court "ruled that it would hold a general venue provision inapplicable only if there was evidence that Congress intended the specific venue provision to be exclusive or intended venue to be restrictively applied under the statute at issue." *Go-Video*, 885 F.2d at 1409.

Because the Ninth Circuit was unequivocal in *Go-Video* that courts *must* look to the legislative history in order "to determine the exclusive application of a special venue statute," this order proceeds by examining the evidence of Congressional intent that exists with respect to Section 310(b)(2). 885 F.2d at 1412.

The parties cite different sections of the legislative history. Plaintiffs refer to a House Report dated November 12, 1985, which simply reiterated the language of Section 310(b)(2): "[a]ny action against the Administrator for failure to perform a non-discretionary duty may be brought in the United States District Court for the District of Columbia." H.R. Rep. 99-523 at 81 (1985), *reprinted in* 1986 U.S.C.C.A.N. 3124, 3204.

For their part, the federal defendants cite the conference report. H.R. Rep. 99-962 at 274 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3276, 3367. The relevant text stated:

> Venue for actions under this section [Section 310(a)(1)] against persons allegedly in violation of standards, or other requirements of CERCLA, is solely in the district court where the violation occurs; similarly, actions for alleged failures to perform a non-discretionary duty [under Section 310(a)(2)] may be brought where the violation occurs, or in the United States District Court for the District of Columbia.

This passage only confuses things further by including a venue that did *not* end up in the final version of the Act (the district where the violation occurs). The best language cited by the federal defendants is thus unconvincing due to its reference to language not ultimately adopted by Congress in Section 310(b)(2) — "where the violation occurs."

As the Supreme Court has pointed out, "[t]he plain words and meaning of a statute cannot be overcome by a legislative history which through strained processes of deduction from

6

events of wholly ambiguous significance, may furnish dubious bases for inference in every direction." *Ex Parte Collet*, 337 U.S. 55, 61 (1949).[4]

### C.  Plain Meaning.

In the absence of clear legislative history, this order will rely on the customary meaning of the word *may*. That customary meaning is permissive. That customary meaning was well-established when CERCLA was enacted. *May* is not generally considered to mean *shall* unless the legislative history clearly so indicates. These basic rules are so widely-used in the drafting of legislation, including in the context of venue provisions, that we should take Congress at its word when it uses *may* and treat it as permissive when, as here, the legislative history is not clearly to the contrary.[5]

Two further points favor this outcome. *First*, as plaintiffs point out, "the precise use of permissive or, alternatively, mandatory language concerning venue is commonplace in environmental and other statutes where Congress wishes to either expand or restrict the range of plaintiffs' options for bringing the case" (Opp. 4). For example, the venue provisions of the Clean Water Act, Clean Air Act, and Surface Mining Control & Reclamation Act all specify that citizen suits "may be brought . . . only in the judicial district in which such source is located." 33 U.S.C. 1365(c)(1), 42 U.S.C. 7604(c)(1), 30 U.S.C. 1270(c)(1). If Congress intended to limit venue in Section 310(b)(2), it would have used a phrase like "may only be brought" or "shall be brought."[6]

---

[4] Unless otherwise stated, all internal citations are omitted from quoted authorities in this order.

[5] This order has not overlooked the fact that CERCLA specifically calls out the District of Columbia as a venue in two different provisions — Section 113(a) and Section 310(b)(2). It has considered the possibility that Congress meant for all actions against government officials to be brought in D.C.  CERCLA Section 310(a)(1), however, allows suits against any person alleged to be in violation of one of CERCLA's standards, "*including the United States and any other governmental instrumentality or agency*, to the extent permitted by the eleventh amendment to the Constitution." 42 U.S.C. 9659(a)(1) (emphasis added). Venue for those suits lies "in the district court for the district in which the alleged violation occurred." 42 U.S.C. 9659(b)(1). This argument thus fails.

[6] Defendants quote the following excerpt from the Supreme Court's decision in *Cortez Byrd Chips, Inc. v. Bill Harbert Construction Co.*, 529 U.S. 193, 198 (2000): "the mere use of 'may' is not necessarily conclusive of congressional intent to provide for a permissive or discretionary authority." In the full opinion, however, that sentence is immediately followed by the following quote from *United States v. Rodgers*, 461 U.S. 677, 706 (1983): "The word 'may,' when used in a statute, usually implies some degree of discretion[, but]

7

*Second*, Section 310(a)(2) specifically names the Administrator of the Agency for Toxic Substances and Disease Registry (ATSDR) as a party that citizens can sue under that section. The ATSDR, which has a number of important nondiscretionary duties under CERCLA, is headquartered in Atlanta, GA. The explicit inclusion of the ATSDR Administrator cuts against defendants' restrictive reading of Section 310(b)(2). The main goal of a restrictive use of *may* in Section 310(b)(2) would have been to limit the inconvenience to government officials caused by requiring them to respond to suits throughout the country. Given that the officials at issue here are not all based in Washington, however, that argument loses some of its weight. Furthermore, as Congress noted when it drafted the general venue provision, 28 U.S.C. 1391, "U.S. attorneys are present in every judicial district. Requiring the Government to defend Government officials and agencies in places other than Washington would not appear to be a burdensome imposition." *Stafford*, 444 U.S. at 541–42.[7]

The citizen-suit provisions of CERCLA were enacted to ensure that citizens had a role in facilitating and expediting the clean-up of hazardous waste sites throughout the country. Former Senator Robert Stafford, who was a member of the CERCLA Conference Committee, had the following to say about the role that citizen suits were meant to play in ensuring the implementation of CERCLA's standards:

> While the conferees fully expect officials of the Environmental Protection Agency and others to adhere to these standards, past experience has demonstrated that enforcement of such legal requirements by affected citizens' groups — acting as private attorneys general — is an essential component in the

---

[t]his common-sense principle of statutory construction . . . can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." In other words, *may* is generally permissive, except when there is legislative history indicating otherwise. In this case, the legislative history provides no guidance.

[7] Plaintiffs point to *Hanford Downwinders Coalition, Inc. v. Dowdle*, 71 F.3d 1469 (9th Cir. 1995), as an example of a citizen suit against the ATSDR for failure to perform a nondiscretionary duty that was brought outside of D.C. There, the Ninth Circuit affirmed the district court's dismissal of plaintiffs' suit, finding it barred by CERCLA Section 113(h). The court did not address whether venue was proper in the Eastern District of Washington under Section 310(b)(2), and the decision is thus off point. Defendants were provided a chance to comment on *Hanford*, given that plaintiffs raised the decision for the first time at oral argument. Defendants pointed out that the ATSDR's mandated actions under CERCLA must be coordinated with other agencies, all of which are located in D.C. That does not make up for the fact that certain plaintiffs (for example, the plaintiffs in *Hanford*) might choose to sue only the ATSDR Administrator without including the administrators of other agencies.

8

> implementation of any such detailed statutory mandate. For this reason, section 206 of the bill establishs [sic] an independent citizens' suit provision under any [sic] section 310 of the act.

132 Cong.Rec. S14898 (daily ed. Oct. 3, 1986). It is hard to conclude that Congress felt citizen suits were "essential" but then confined them to one district, thereby undercutting their availability.

There is no perfect answer to this issue of statutory construction. After considering many angles, this order will go with the customary and permissive meaning of *may*. This order holds that Section 310(b)(2) supplements Section 1391(e) and thus allows citizen suits in the following venues: (i) where the defendant resides; (ii) where a substantial part of the events or omissions giving rise to the claim occurred; (iii) where any plaintiff resides; or (iv) in the District Court for the District of Columbia.

### 2.  THE APA CLAIM.

Turning to the APA claim, Section 706(1) of the APA authorizes suits to "compel agency action unlawfully withheld or unreasonably delayed." Plaintiffs allege that the failure to promulgate financial assurance regulations, as required by CERCLA Section 108(b), constitutes "action unlawfully withheld or unreasonably delayed." Defendants argue that because a challenge to any regulations they might one day promulgate would have to be heard in the Court of Appeals for the D.C. Circuit, plaintiffs' APA claim can only be heard in that circuit. Plaintiffs do not dispute that Section 113(a) of CERCLA, 42 U.S.C. 9613(a), gives the D.C. Circuit exclusive jurisdiction to review any regulations that the EPA issues:

> Review of any regulation promulgated under this chapter may be had upon application by any interested person only in the Circuit Court of Appeals of the United States for the District of Columbia.

Defendants' motion to dismiss plaintiffs' APA claim focused on *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70, 72 (D.C. Cir. 1984). There, the D.C. Circuit addressed "whether a petition to compel unreasonably delayed agency action properly lies in [the Court of Appeals] or in the District Court, or whether the two courts have concurrent jurisdiction, when any final agency action in the matter would be directly reviewable only in the Courts of Appeals." The court held that "where a statute commits review of agency action to

9

the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." *Id.* at 75.[8] The Ninth Circuit adopted *TRAC* one year later in *Public Utility Commissioner of Oregon v. Bonneville Power Administration*, 767 F.2d 622, 626 (9th Cir. 1985).

What neither party was able to address, however, given the timing of this motion to dismiss, is the Ninth Circuit's June 28, 2008 decision in *Coos County Board of County Commissioners v. Kempthorne*, 2008 WL 2522202 (9th Cir. 2008).[9] There, the plaintiff brought suit against the Fish and Wildlife Service under both the citizen-suit provision of the Endangered Species Act and Section 706(1) of the APA. The ESA citizen-suit provision, much like CERCLA Section 310(a)(2), allows suits "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty . . . which is not discretionary with the Secretary." 16 U.S.C. 1540(g)(1)(c). The Ninth Circuit found that the plaintiff's Section 706(1) claim was precluded by its citizen suit, *Coos County*, 2008 WL 2522202, at *9:

> The scope of 5 U.S.C. § 706(1) tracks that of 16 U.S.C. § 1540(g)(1)(C) for the purposes of this appeal, as the applicability of both provisions depends upon whether FWS has failed to act on a nondiscretionary duty to publish proposed regulations delisting the murrelets (and final regulations thereafter). Importantly, to the extent that the two causes of action are identical, the APA provision is not applicable, because "[i]f a plaintiff can bring suit against the responsible federal agencies under [a citizen suit provision], this action precludes an additional suit under the APA." *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1005 (9th Cir. 1998).

The Ninth Circuit's decision was predicated on the fact that Section 704 of the APA limits APA review to "final agency action for which there is no other adequate remedy in a court." *See also Hayes v. Whitman*, 264 F.3d 1017, 1025 (10th Cir. 2001) ("Because review of Plaintiffs' claim *is* available under the Clean Water Act, it is not subject to review under the APA");

---

[8] This part of the court's decision, because it resolved inconsistencies among the court's prior decisions, was "considered separately and approved by the whole court, and thus constitutes the law of the circuit." *TRAC*, 750 F.2d at 75 n.24.

[9] Defendants' motion to dismiss was filed on May 16, 2008. Plaintiffs, who were granted a postponement, filed their opposition on June 12, 2008, and defendants filed a reply on June 19, 2008. Oral arguments were heard on July 3, 2008.

United States District Court
For the Northern District of California

*Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action").

Defendants here did argue in their reply brief that plaintiffs' Section 706(1) claim was duplicative of their citizen suit inasmuch as the Section 706(1) claim alleged defendants' actions to have been "unlawfully withheld." They did not, however, discuss *Coos County*, which had not yet been published, nor did they contend that the "unreasonable delay" claim was duplicative. Plaintiffs were not given the opportunity to respond to these arguments, because they were raised for the first time in the reply brief. Before this Court can reach the question of whether *TRAC* and its progeny mandate that plaintiffs' APA claim be dismissed or transferred to the Court of Appeals for the District of Columbia Circuit, it must determine whether plaintiffs' APA claim was properly brought in the first place, or whether that claim is duplicative of the CERCLA claim. The parties are thus ordered to show cause within fourteen days as to whether *Coos County* and the Ninth Circuit's prior caselaw preclude plaintiffs' APA claim and, if so, to what extent.

## CONCLUSION

For the reasons stated above, defendants' motion is **DENIED IN PART**. Subject-matter jurisdiction over plaintiffs' CERCLA claim exists in this district. With respect to plaintiffs' APA claim, the parties are **ORDERED TO SHOW CAUSE** within **FOURTEEN DAYS** as to whether that claim is duplicative of plaintiffs' CERCLA claim.

**IT IS SO ORDERED.**

Dated: July 23, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE