IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SIERRA CLUB, GREAT BASIN RESOURCE WATCH, AMIGOS BRAVOS, and IDAHO CONSERVATION LEAGUE,

    Plaintiffs,

  v.

STEPHEN JOHNSON, Administrator, United States Environmental Protection Agency, and MARY E. PETERS, Secretary, United States Department of Transportation,

    Defendants,

  and

SUPERFUND SETTLEMENTS PROJECT, RCRA CORRECTIVE ACTION PROJECT, AMERICAN PETROLEUM INSTITUTE, and TREATED WOOD COUNCIL,

    Defendant-Intervenors.

No. C 08-01409 WHA

**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

In this environmental action alleging failure to perform nondiscretionary duties required by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), the parties have filed cross-motions for summary judgment. For the reasons stated below, all motions are **GRANTED IN PART** and **DENIED IN PART**.

**STATEMENT**

Plaintiffs Sierra Club, Great Basin Resource Watch, Amigos Bravos, and Idaho Conservation League brought this action against defendants Stephen L. Johnson, sued in his official capacity as Administrator of the Environmental Protection Agency, and Mary E. Peters, sued in her official capacity as Secretary of the Department of Transportation.[1] Intervenors in this action include the Superfund Settlements Project, RCRA Corrective Action Project, American Petroleum Institute, and Treated Wood Council.

Plaintiffs' claim arises under Section 310(a)(2) of CERCLA, codified as 42 U.S.C. 9659(a)(2), which authorizes citizen suits against federal officials for failure to perform any nondiscretionary act or duty mandated by CERCLA. Congress enacted CERCLA, also known as "Superfund," in 1980 to address the cleanup of improperly disposed hazardous substances. Section 108(b) mandated that the President promulgate regulations to ensure that facilities involved in any way with hazardous substances would remain financially responsible for cleaning up any substances that were improperly disposed. 42 U.S.C. 9608(b).

By executive order, all functions vested in the President under Section 108(b) were delegated to the Administrator of the EPA, except for functions having to do with transportation-related facilities, which were delegated to the Secretary of the DOT. Defendants EPA and DOT concede they have not carried out the actions required by Section 108(b), namely to: (i) publish notice of the classes of facilities for which financial responsibility requirements would be required not later than three years after December 11, 1980; (ii) promulgate requirements that classes of facilities establish and maintain evidence of financial responsibility consistent with the degree and duration of risk associated with the production, transportation, treatment, storage, or disposal of hazardous substances beginning not earlier than five years after December 11, 1980; and (iii) incrementally impose financial responsibility requirements as quickly as can reasonably be achieved but in no event more than four years after the date of promulgation. 42 U.S.C. 9608(b)(1), (b)(3). Because defendants have taken

---

[1] The named defendants were the former officials. The current Administrator of the Environmental Protection Agency is Lisa Jackson and the current Secretary of Transportation is Ray LaHood.

1 none of these steps, plaintiffs assert that defendants are currently in violation of Section 108(b) and that failure, plaintiffs claim, increases the likelihood that plaintiffs' members and their environment will be exposed to unremediated releases of hazardous substances.

Defendants previously moved to dismiss plaintiffs' CERCLA claim for lack of subject-matter jurisdiction. That motion was denied in an order dated July 23, 2008. Defendants also moved to dismiss plaintiffs' second claim for relief under the Administrative Procedure Act. Defendants argued in their motion to dismiss that jurisdiction over the APA claim was proper only in the Court of Appeals for the District of Columbia Circuit. This Court agreed, and defendants' motion to dismiss was granted, and an order dated August 8, 2008 dismissed the APA claim in its entirety without prejudice for plaintiffs to refile in the Court of Appeals for the D.C. Circuit.

All parties now have filed cross motions for summary judgment.

**ANALYSIS**

**1.   STANDING.**

Defendants EPA and DOT and intervenors moved for summary judgment on the grounds that plaintiffs lack standing to challenge defendants' failure to act under CERCLA. To evaluate standing, a court must ask whether a plaintiff has suffered injury to satisfy the "case or controversy" requirement of Article III. To satisfy the case and controversy requirement of Article III standing, a plaintiff "must show that: (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt. Sys., Inc.*, 528 U.S. 167, 180–81 (2000).[2]

When an organization brings suit, there is yet another layer of analysis. An organization has standing to bring suit on behalf of its members when: (1) its members would otherwise have Article III standing to sue in their own right; (2) the interest it seeks to protect are germane to the organization's purposes; and (3) neither the claim asserted nor relief requested requires

---

[2] Unless otherwise noted, internal citations have been omitted from quotations.

3

the participation of individual members. *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). In environmental cases, members have suffered an injury in fact by showing that they have an aesthetic or recreational interest in a particular place, or animal, or plant species, that interest is impaired by defendants' conduct, and that the injury will likely be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Sierra Club v. Morton*, 405 U.S. 727, 734–35 (1972); *NRDC v. EPA*. 542 F.3d 1235, 1246 (9th Cir. 2008).

### A. DOT.

Defendants argue that plaintiffs lack standing to sue defendant DOT. Intervenors join this argument. This order agrees that plaintiffs do not have standing to bring this action against defendant DOT. Plaintiffs have not established they have suffered an injury that is fairly traceable to DOT's action or inaction and is likely to be redressed by a order in their favor. DOT only has Section 108(b) authority over transportation-related facilities, including transportation-related pipelines, while EPA has authority over all other facilities. Pointing to member declarations, plaintiffs argue they have provided evidence that members have been personally harmed by the release of hazardous substances from facilities, particularly the Molycorp mining facility. The declarations of members Shields and Eagle, for example, allege they suffered injury from exposure to releases of hazardous substances from pipelines at the Molycorp mine. Plaintiffs assert the release of hazardous substances from these pipelines should be addressed through DOT's financial assurances regulations. Plaintiffs, however, do not address the DOT's assertion that it is not responsible for financial assurance requirements for the Molycorp mine pipeline because it is not related to transportation. Plaintiffs do not point to any evidence that the Molycorp mine is a transportation-related facility. Instead, plaintiffs just make a circular argument that injury from the leaking of hazardous substances from pipelines are sufficient to demonstrate injury in fact from transportation-related facilities. Plaintiffs have not established any injury due to DOT's inaction regarding financial assurance regulations for transportation-related facilities. Plaintiffs lack standing against DOT and summary judgment for defendant DOT is **GRANTED**.

**B.     EPA**.

Only intervenors challenge plaintiffs' standing as to claims against defendant EPA. This order first addresses whether the members of the organization have suffered an "injury in fact." Plaintiffs' have submitted declarations from their members showing they have suffered an injury in fact. The declarations state that plaintiffs' members have been harmed by the release of hazardous substances from facilities that are not currently subject to financial assurance requirements under CERCLA and their enjoyment has been diminished as a result of the release of hazardous substances. For example, the members have expressed concern about the effect of hazardous substances on recreational interests such as fishing, bird watching, hiking, biking, and kayaking, aesthetic interests such as the beauty of the national forest, and economic interests including the diminution in value of a family farm. These statements are sufficient to establish injury in fact. *See NRDC v. EPA*, 542 F.3d 1235, 1245 (9th Cir. 2008) (noting that evidence of reasonable concerns about the effects of alleged harm that directly affected recreational, aesthetic, and economic interests is sufficient to establish injury in fact).

Intervenors contend that plaintiffs cannot establish an injury in fact to support a claim for nationwide relief based upon declarations alleging localized injuries at six sites in five states. In *Alaska Center for Environment v. Browner,* 20 F.3d 981, 985 (9th Cir. 1994), the court stated that plaintiffs seeking relief that may encompass areas beyond those locations in which they individually have suffered harm need not establish standing by demonstrating harm over the entire area in which the remedy they seek may affect but are only required to establish that a representative number of areas were adversely affected by the government's action or inaction. Similarly in this case, plaintiffs need not establish injury in every state and at every facility that produces hazardous waste to establish injury in fact in order to seek nationwide relief. Plaintiffs have been injured in fact if they or their local environments are perceptibly affected by the unlawful inaction in question. Plaintiffs' declarations aver specific facts demonstrating that individual harm has occurred in a number of representative locations, and plaintiffs' showing is sufficient to establish injury in fact. Furthermore, nationwide relief should not be limited by this order to the specific sites identified by plaintiffs in this action

5

1  because that would entail imposing a prioritization upon EPA when the statute itself does not
2  limit the scope to specific facilities that EPA may ultimately decide to include in the notice of
3  priority of classes of facilities.

4  To support their contention that the facilities plaintiffs point to are not sufficient to
5  establish nationwide relief, intervenors rely on *Conservation Law Found. of New England v.*
6  *Reilly*, 950 F.2d 38 (1st Cir. 1991).  That decision is distinguishable.  In *Reilly*, the plaintiffs
7  relied on member declarations showing injury at ten sites in New England, but the court found
8  that the absence of plaintiffs from the majority of regions in the country did not support an
9  entitlement to nationwide relief.  In contrast, plaintiffs here have not pointed to just one area of
10 the country but have relied on member declarations demonstrating injuries in varying parts of
11 the country, including Texas, Colorado, New Mexico, Nevada, and Idaho.

12 Intervenors also contend that because three declarations allege no personal injury at all,
13 an injury in fact cannot be established for those plaintiffs.  To survive summary judgment, the
14 injury-in-fact test requires that an association need only aver that at least one member would be
15 directly affected apart from their special interest in the subject.  *See Lujan*, 504 U.S. at 563.
16 Even if three of plaintiffs' declarants fail to claim individual harm sufficient to establish injury
17 in fact, the other declarations and evidence submitted are sufficient to find injury in fact.  The
18 other declarations aver specific facts of individual harm distinct from the harm that plaintiffs as
19 a whole claim.  Plaintiffs aver enough facts to show an injury in fact to establish standing.

20 Intervenors next argue that plaintiffs cannot establish that their injuries are fairly
21 traceable to the challenged conduct or are redressable.  Plaintiffs rely on *NRDC v. EPA* to argue
22 this is a procedural case and a relaxed standard applies for causation and redressability;
23 whereas, intervenors contend the case is substantive.  While the Ninth Circuit in *NRDC v. EPA*
24 did not explicitly hold that a failure to promulgate is a procedural injury, the court noted that
25 plaintiffs' claim regarding the EPA's failure to promulgate certain guidelines was similar to
26 cases where the plaintiffs' claim is procedural and concluded that a precise showing for
27 causation and redressability is not required in such cases.  542 F.3d at 1246 n.6.  As in *NRDC v.*
28 *EPA*, plaintiffs' here have challenged EPA's failure to promulgate; therefore, plaintiffs'

6

showing for these two standing factors, *i.e.,* whether their injuries are traceable to EPA's failure to publish notice of priority and promulgate financial assurance regulations and are redressable by publication and promulgation cannot be entirely precise without knowledge of the substance of the notice and regulations EPA would promulgate if required to do so. "[T]o require a precise showing would mean that *no* plaintiff would have standing to bring such a suit, as one cannot demonstrate the efficacy of regulations that have yet to be issued." *Id.* at 1246. In a citizen suit addressing whether the EPA had discretion to promulgate guidelines and standards for storm water runoff, the Ninth Circuit in *NRDC v. EPA* concluded plaintiffs can satisfy the "traceability" and "redressability" factors if they showed the type of "storm water discharge causing their injury is that which ELGs and NSPs aim to address, and that [the guidelines and standards] are likely to reduce the risk of pollution causing their injury." *Id.* As discussed below, plaintiffs have submitted evidence that their injuries are of the type the financial assurance regulations aim to address and are likely to reduce the risk of pollution. For example, plaintiffs have submitted member declarations which state that hazardous waste substances are causing pollution and harm plaintiff's health, enjoyment, property and the environment (*e.g.,* Cargill Decl. ¶¶ 5–6, 14) (stating he observed personnel from a cement plant dumping waste product in an open field and the wind gusts sent the substances airborne into the road, residences, and community causing him concern about a negative impact on his health).

Intervenors further argue that plaintiffs failed to show that it is likely that the promulgation of new financial assurance regulations will redress their specific alleged injuries because plaintiffs present no evidence that regulations would cover any of the sites or substances affecting plaintiffs. Intervenors' argument is unpersuasive. As previously stated, plaintiffs do not have to provide so precise a showing. While plaintiffs arguably have not established with absolute precision that the sites or substances affecting each individual declarant will be remedied if EPA is required to act, if plaintiffs are provided with a favorable decision, EPA would have to take action regarding the financial assurance requirements and require facilities that produce hazardous waste to comply with those requirements. While EPA might not address those sites or facilities affecting plaintiffs' declarants immediately, EPA

7

1  inevitably would promulgate financial assurance regulations that affect the type of facilities
2  plaintiffs have specified.
3     According to intervenors, plaintiffs failed to establish causation because their alleged
4  injuries are dependent on the actions of third parties not before the court.  The "causation
5  question concerns only whether plaintiffs' injury is dependent upon the agency's policy, or is
6  instead the result of independent incentives governing [a] third part[y's] decision-making
7  process." *Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1518 (9th Cir. 1992).
8  Plaintiffs claim their injury results from EPA's inaction while intervenors claim plaintiffs'
9  injury results from the actions of third parties whose decision-making process may or may not
10 be affected by EPA's failure to promulgate financial assurance requirements.  Plaintiffs have
11 the better argument and they are supported by evidence from the GAO, EPA and other
12 government agency reports.  In support of their summary judgment motion, plaintiffs submitted
13 the August 2005 United States Government Accountability Office report ("GAO report"),
14 which found that bankruptcy laws and laws meant to force polluting facilities to be responsible
15 for cleaning up hazardous waste conflict, allowing some facilities to escape responsibility for
16 cleaning up their hazardous waste.  The GAO report also found that if EPA began promulgating
17 financial assurance requirements, then businesses would not be able to limit environmental
18 cleanup liability through bankruptcy or reorganization because they would have to meet
19 assurance requirements through a bond, trust fund, or other financial guarantee.  The GAO
20 report stated:

> EPA has not yet implemented a 1980 statutory mandate under Superfund to require businesses handling hazardous substances to maintain financial assurances that would provide evidence of their ability to pay to clean up potential spills or other environmental contamination that could result from their operations.  By its inaction on this mandate, EPA has continued to expose the Superfund program, and ultimately the U.S. taxpayers, to potentially enormous cleanup costs at facilities that currently are not required to have financial assurances for cleanup costs . . . Although implementing the requirement could help avoid the creation of additional Superfund sites and could provide funds to help pay for cleanups, EPA has cited, among other things, competing priorities and lack of funds as reasons for having made no progress in this area for nearly 25 years.

8

GAO Rep. No. 05-658 at 5 (August 2005). The GAO report found that EPA does not dispute the potential effectiveness of promulgating financial assurance requirements but that they lack resources to implement such a program. CERCLA was enacted in order to make the producers of hazardous waste responsible for cleaning up their waste. Section 108 was created to make sure that those facilities maintain evidence of financial assurance commensurate with the level of risk they pose. By not promulgating financial assurance requirements, EPA has allowed companies that otherwise might not have been able to operate and produce hazardous waste to potentially shift the responsibility for cleaning up hazardous waste to taxpayers. GAO Rep. No. 05-658 (August 2005).

Intervenors also attack plaintiffs' standing by arguing that plaintiffs failed to show redressability because plaintiffs rely on a number of speculative assumptions: (i) that any financial assurance regulation issued under CERCLA would cover all of the sites and all of the substances mentioned in their declarations; (ii) that the companies managing the sites mentioned in their declarations will become insolvent; (iii) that if companies involved at these sites actually become insolvent, new financial assurance requirements would result in more complete cleanups at these sites than would otherwise occur; (iv) that new financial assurance regulations will be responsive to a company's environmental management practices, thereby creating an incentive for better management; and (v) that the companies involved at their sites will change their environmental management practices due to the issuance of financial assurance regulations, rather than continue the management practices that they had developed in response to other legal and regulatory factors. Plaintiffs claim that EPA's failure to publish notice and promulgate financial assurance requirements caused their injury and that if EPA did so, their injuries would be redressed. The injuries that plaintiffs have suffered are those to their health, property, and local environments from the release of hazardous substances by facilities not covered by financial assurance requirements. EPA has recognized that financial assurances are intended to address pollution from hazardous substances. For instance, EPA has acknowledged "[h]aving the financial wherewithal to perform closure and/or cleanup is critical to protecting human health and the environment from toxic and hazardous waste and substances

9

that are polluting the land, air, and water." EPA, *Compliance and Enforcement National Priority: Financial Responsibility Under Environmental Laws* 2 (2005).

Plaintiffs have shown they have been injured as a result of EPA's inaction and stand to expect to have their injury redressed by prevailing in this lawsuit. Accordingly, intervenors' motion for summary judgment asserting plaintiffs lack standing to sue defendant EPA is **DENIED.**

### C. EVIDENTIARY OBJECTIONS.

Finally, intervenors also contend that plaintiffs' declaration testimony regarding financial assurances must be stricken for failure to comply with FRCP 56(e), Local Rule 7-5 and FRE 702. FRCP 56(e) states that an affidavit or declaration must be made on personal knowledge, set on facts that would be admissible in evidence, and show that the affiant is competent to testify. FRE 702 states that if scientific, technical or "other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Intervenors contend that because knowledge of financial assurances is specialized knowledge and declarants lack personal knowledge, declarants are not competent to testify that if companies were required to have financial assurances to clean up their pollution, then they would not have been polluted and the companies would have greater incentive to safely manage and dispose of their pollution. To the extent that plaintiffs rely on their declarations to establish standing, intervenors argue that those declarations must be stricken according to Local Rule 7-5, which allows a court to strike in whole or in part declarations that are not in compliance with the requirements of FRCP 56(e).

Because this order does not rely on the portions of the declarations that intervenors raise objections about, this issue is moot. Besides, standing can be established with affidavits or other evidence. *See Lujan*, 504 U.S. at 563. Plaintiffs have presented enough other admissible evidence, such as the GAO report, upon which this Court may rely in making its determination of whether plaintiffs have standing that determining whether plaintiffs' declaration testimony is admissible to establish standing is not necessary.

10

### 2. NONDISCRETIONARY DUTIES UNDER 42 U.S.C. 9608

CERCLA allows citizens to commence a civil action against EPA for failure to perform any act or duty under the Act which is not discretionary. 42 U.S.C. 9659. Thus, citizen suits may not be brought to enforce actions when the agency has discretion. EPA has admitted that the acts at issue here — to publish notice of classes, and promulgate and implement regulations pursuant to Section 108(b) of CERCLA — have not been done. Plaintiffs allege that these three obligations are nondiscretionary duties. EPA does not dispute that the requirement to identify and publish notice of classes was a nondiscretionary duty with a date-certain deadline. Instead, EPA argues plaintiffs' notice claim is time-barred by a six year statute of limitations. This order disagrees and finds that plaintiffs' claim regarding EPA's nondiscretionary duty to identify and publish notice of classes is not time-barred.

Plaintiffs assert that EPA has a nondiscretionary duty to publish notice under Section 108(b)(1). Section 108(b)(1) states:

> Not later than three years after December 11, 1980, the President shall identify those classes for which requirements will be first developed and publish notice of such identification in the Federal Register. Priority in the development of such requirements shall be accorded to those classes of facilities, owners, and operators which the President determines present the highest level of risk of injury.

42 U.S.C. 9608(b)(1). EPA concedes they have not published notice as described in Section 108(b)(1), but they contend plaintiffs brought their suit too late. EPA argues that plaintiffs' notice claim is time-barred by the six-year statute of limitations set forth in 28 U.S.C. 2401(a), which states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

As stated in Section 2401(a), the point when the statute of limitations begins to run depends on when plaintiffs' cause of action first accrues. The parties do not dispute that there is a six-year limitation, but rather they dispute the relevant starting date for the limitations period. EPA contends the relevant date is sixty days after the deadline for publication of notice; whereas, plaintiffs argue that every day is a continuing violation. EPA asserts that plaintiffs' claims are time-barred because they filed their complaint on March 12, 2008, which is almost

11

two decades after their notice of priority claim first accrued. EPA did not publish a notice of priority in the Federal Register "not later than three years after December 11, 1980," or in other words by December 11, 1983. 42 U.S.C. 9608(b)(1). Plaintiffs could not initiate a citizen suit until the nondiscretionary citizen suit provision in Section 310(a)(2) of CERCLA was enacted as part of the 1986 SARA amendments. *See* SARA, Pub. L. No. 99-499, § 206. A nondiscretionary citizen suit could not start until the plaintiffs provided sixty-day notice of its intent to sue. 42 U.S.C. 9659. EPA asserts a person, therefore, could have first brought suit sixty days after the October 17, 1986 passage of the SARA amendments, *i.e.*, December 16, 1986, and this is when the Section 2401(a) limitations period started. Based on EPA's argument, plaintiffs were required to bring their claim by December 16, 1992, making the present action untimely. Plaintiffs counter that they are within the six-year statute of limitations, because with each day that EPA fails to perform the nondiscretionary duty required by Section 108(b) the statute is violated anew.

Relying on *John R. Sand & Gravel Co. v. United States*, 128 S. Ct. 750 (2008), EPA argues that the statute of limitations in Section 2401(a) is a jurisdictional bar to plaintiff bringing suit and it cannot be waived. In *Sand*, the Supreme Court held 28 U.S.C. 2501 is jurisdictional in nature. EPA argues that the language of Sections 2501 and 2401(a) are almost identical, and this supports a conclusion that Section 2401, like Section 2501, is jurisdictional. *Compare* 28 U.S.C. 2501 ("[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues"); 28 U.S.C. 2401(a) ("every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").

The Ninth Circuit has not yet addressed the applicability of *Sand* to Section 2401(a). The Ninth Circuit, however, has previously stated "section 2401(a)'s six-year statute of limitations is not jurisdictional, but is subject to waiver." *See Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765 (9th Cir. 1997). In any event, *Sand* is distinguishable. That decision addressed a different six-year statute of limitations, *i.e.*, Section 2501, and as the Supreme Court

12

1  noted, Section 2501 is a "special statute of limitations governing the Court of Federal Claims."
2  *John R. Sand & Gravel Co.*, 128 S. Ct. at 752.  While that decision referred to Section 2401(a),
3  it was referenced only in dicta in a dissenting opinion stating that the courts of appeals are
4  divided on the waivable nature of Section 2401(a).  *Id.* at 760–61.  This order declines to find
5  that *Sand* alters the Ninth Circuit's pronouncement that Section 2401(a) is not jurisdictional.  In
6  the absence of guidance to the contrary, this order holds that Section 2401 is not jurisdictional.

7  Plaintiffs argue that the continuing-violations doctrine applies to EPA's failure to act.
8  "The continuing-violations doctrine serves to bar the application of the statute of limitations
9  defense when a single violation exists that is continuing in nature.  Under the continuing-
10 violations doctrine, the court can consider as timely all relevant violations including those that
11 would otherwise be time barred."  *See Pub. Citizen, Inc. v. Mukasey*, 2008 U.S. Dist. LEXIS
12 81246, *26 (N.D. Cal. Oct. 9, 2008).  While the Ninth Circuit has applied the continuing-
13 violations doctrine in employment and civil rights cases, the Ninth Circuit has not addressed
14 whether the continuing-violation doctrine applies in the environmental context, and other courts
15 are split on this issue.

16 Recently, several district courts in this circuit, including the District Court of the
17 Northern District of California and the District Court of Oregon, have considered this issue in
18 the environmental context and have decided the claims at issue were not time barred under the
19 six-year statute of limitations.  *See id.; Inst. for Wildlife Prot. v. United States Fish & Wildlife*
20 *Serv.*, 2007 U.S. Dist. LEXIS 85197 (D. Or. Nov. 16, 2007).  In deciding whether to apply the
21 continuing-violations doctrine, the District Court of Oregon, for example, examined the
22 underlying purpose of statutes of limitations and concluded such limitations are "grounded in
23 equity and based on the principles of avoiding stale claims, achieving finality, and protecting
24 those who rely on the law.  When the statutory violation is a continuing one the staleness
25 concern disappears."  *See Inst. for Wildlife Prot.*, 2007 U.S. Dist. LEXIS 85197, at *13.  This
26 order agrees and declines to apply the six-year limitation of Section 2401(a) to EPA's failure to
27 perform a nondiscretionary duty.  Applying Section 2401(a) would circumvent defendant's
28

13

accountability to comply with a statutory obligation to publish notice. EPA's failure to publish notice of classes of facilities is a continuing violation, and thus the action is timely.

EPA's reliance on *Center for Biological Diversity v. Hamilton*, 453 F.3d 1331 (11th Cir. 2006) is not only misplaced but also is against the weight of authority. In *Hamilton*, the Eleventh Circuit concluded plaintiffs' claim to compel agency compliance with ESA's critical habitat designation requirements were time barred after ten years of agency noncompliance had elapsed. Narrowly construing Section 2401(a), the Eleventh Circuit declined to apply the continuing-violation doctrine in the environmental context and determined the agency's failure to act was a one time violation triggering the statute of limitations on the first day of the agency's violation. *Id.* at 1334–35. The Eleventh Circuit relied on their view that Section 2401 is jurisdictional. As discussed above, the Ninth Circuit has not adopted this view and has stated Section 2401 is not jurisdictional and can be waived. In the absence of guidance from the Ninth Circuit to the contrary, this order applies the continuing-violation doctrine and concludes that plaintiffs' nondiscretionary duty claim regarding publication of notice of classes is not time-barred by the six-year statute of limitations.

As for the requirements to promulgate and implement financial assurance, EPA argues these obligations are discretionary, because Section 108(b) does not specify a date-certain deadline for completion of these requirements. At this time, this order declines to address the merits of EPA's argument regarding their duty to promulgate and implement financial assurance requirements. Instead, the Court will hold these issues in abeyance pending EPA's publication of notice of classes of facility as the Court believes this will shed light on the merits of the other challenged duties under Section 108(b).

14

**CONCLUSION**

For the foregoing reasons, plaintiffs lack standing to sue defendant DOT, plaintiffs have standing to sue defendant EPA, and plaintiffs' claim regarding publication of notice of classes is timely. Defendant EPA must identify and publish notice of classes as specified in Section 108(b)(1) by **MAY 4, 2009.**

**IT IS SO ORDERED.**

Dated: February 25, 2009

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE