IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIERRA CLUB, GREAT BASIN RESOURCE WATCH, AMIGOS BRAVOS, and IDAHO CONSERVATION LEAGUE,<br><br>Plaintiffs,<br>v.<br><br>STEPHEN JOHNSON, Administrator, United States Environmental Protection Agency, and MARY E. PETERS, Secretary, United States Department of Transportation,<br><br>Defendants,<br><br>and<br><br>SUPERFUND SETTLEMENTS PROJECT, RCRA CORRECTIVE ACTION PROJECT, AMERICAN PETROLEUM INSTITUTE, and TREATED WOOD COUNCIL,<br><br>Defendant-Intervenors.<br>_____ / | No. C 08-01409 WHA<br><br>**ORDER GRANTING ENTITLEMENT TO ATTORNEY'S FEES, VACATING HEARING, AND PROVIDING INSTRUCTIONS TO PARTIES** |

**INTRODUCTION**

In this environmental citizen suit involving the failure to perform nondiscretionary duties required by the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), plaintiffs move for an award of reasonable attorney's fees and costs pursuant to Civil Local Rule 54-5 and 42 U.S.C. 9659(f). For the reasons stated below, plaintiffs' entitlement to attorney's fees and costs is **GRANTED**. Plaintiffs, however, must resubmit their fee declaration in accordance with the procedures set forth herein. Additionally, any remaining disputes as to the

total amount of fees and costs, as the procedures herein describe, will be referred to a special master.

**STATEMENT**

Plaintiffs Sierra Club, Great Basin Resource Watch, Amigos Bravos, and Idaho Conservation League brought this environmental citizen suit against defendants Stephen L. Johnson, sued in his official capacity as Administrator of the Environmental Protection Agency (EPA), and Mary E. Peters, sued in her official capacity as Secretary of the Department of Transportation (DOT). Intervenors in this action include the Superfund Settlements Project, RCRA Corrective Action Project, American Petroleum Institute, and Treated Wood Council.

Plaintiffs' complaint asserted two claims for relief. The first claim was brought under Section 310(a)(2) of CERCLA, 42 U.S.C. 9659(a)(2), which authorizes citizen suits against federal officials for failure to perform any nondiscretionary act or duty mandated by CERCLA. The second claim, asserted in the alternative to the CERCLA claim, was brought under Section 706(a) of the Administrative Procedure Act, 5 U.S.C. 706(1), which provides courts with jurisdiction to "compel agency action unlawfully withheld or unreasonably delayed." Both claims were based on defendants' alleged failure to comply with CERCLA Section 108(b), 42 U.S.C. 9608(b), which requires defendants to investigate, notice, and issue regulations requiring owners and operators of sites that handle or produce toxic materials to provide financial assurances that they will be able to pay for toxic waste cleanups.

Specifically, Section 108(b) requires the EPA and DOT to: (i) publish notice of the classes of facilities for which financial responsibility requirements would be required not later than three years after December 11, 1980; (ii) promulgate requirements that classes of facilities establish and maintain evidence of financial responsibility consistent with the degree and duration of risk associated with the production, transportation, treatment, storage, or disposal of hazardous substances beginning not earlier than five years after December 11, 1980; and (iii) incrementally impose financial responsibility requirements as quickly as can reasonably be achieved but in no event more than four years after the date of promulgation. 42 U.S.C. 9608(b)(1), (b)(3).

On May 16, 2008, defendants moved to dismiss plaintiffs' CERCLA and APA claims for lack of subject-matter jurisdiction (Dkt. No. 29). As to the CERCLA claim, the motion was denied on July 23, 2008, because the undersigned determined — after a lengthy analysis of the statutory language — that jurisdiction was proper under Section 310(b)(2) and Section 1391(e) (Dkt. No. 58). After seeking further briefing from the parties, however, plaintiffs' APA claim was dismissed in its entirety without prejudice on August 8, 2009, after it was found that subject-matter jurisdiction over the claim was proper only in the Court of Appeals for the District of Columbia Circuit (Dkt. No. 67).

The parties then filed cross-motions for summary judgment on three issues: (1) the alleged nondiscretionary duties imposed by CERCLA Section 108(b), (2) plaintiffs' standing to sue defendant DOT, and (3) plaintiffs' standing to sue defendant EPA (raised by motion of defendant-interveners, and *not* joined by defendant EPA) (Dkt. Nos. 71, 84). An order dated February 25, 2009, granted in part and denied in part the cross-motions (Dkt. No. 105). Specifically, the February 25 order held that plaintiffs lacked standing to sue defendant DOT, that plaintiffs had proper standing to sue defendant EPA, and that plaintiffs' nondiscretionary duty claim regarding publication of notice of classes was timely. In light of these rulings, the EPA was ordered to identify and publish notice of classes as specified in Section 108(b)(1), while the other two issues concerning promulgation and implementation of financial assurance requirements were held in abeyance pending the EPA's compliance. After the EPA published notice as ordered, summary judgment was granted in the EPA's favor as to all remaining issues in the case on August 5, 2009 (Dkt. No. 111). The August 5 order found that the EPA's duties to promulgate and impose financial responsibility requirements were *discretionary*, and therefore not within CERCLA's authorization of citizen suits to enforce any act or duty under the Act which is *nondiscretionary*. Thereafter, the undersigned entered judgment (Dkt. No. 114).

Plaintiffs now bring this motion seeking a full award of attorney's fees and litigation costs against defendant EPA, asserting that such an award is both statutorily authorized and reasonable given the circumstances and outcome of this action. This order now turns to these issues.

3

**ANALYSIS**

**1. PLAINTIFFS' ENTITLEMENT TO ATTORNEY'S FEES**

In the United States, parties are ordinarily required to bear their own attorney's fees — a prevailing party is not entitled to collect from the loser. *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 602 (2001). This being so, district courts follow "a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994). Section 310(f) of CERCLA, which authorizes a court to "award costs of litigation (including reasonable attorney and expert witness fees) to the prevailing party or the substantially prevailing party whenever the court determines such an award is appropriate," provides such authority. 42 U.S.C. 9659(f). A party is prevailing under CERLA (and other statutes with similar provisions) if it "has obtained a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'" *St. John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009) (citing *Buckhannon*, 532 U.S. at 604). The standard for obtaining "prevailing party" status is very low: the "plaintiff must receive some actual relief that serves the goals of the claim in his or her complaint," but "an extremely small amount of relief is sufficient." *Id.* at 1059.

Here, defendants — perhaps realizing the futility of arguing otherwise in light of the February 25 summary judgment order — concede that plaintiffs qualify as prevailing parties under their CERCLA claim, and are therefore eligible for reasonable fees under 42 U.S.C. 9569(f) (Opp. 7). Where the parties do not agree, however, is on the proper measurement of "reasonable" fees. Indeed, the "prevailing party" requirement "brings the plaintiff only across the statutory threshold." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). It remains within the sole discretion of the district court whether "an award is appropriate," and "to determine what fee is 'reasonable.'" *Ibid.*; 42 U.S.C. 9569(f). Because plaintiffs have succeeded on obtaining at least some of their requested relief under their CERCLA claim, this order finds that an award of

4

attorney's fees is appropriate under the circumstances of this litigation.[1] The next question is whether the fees sought by plaintiffs are "reasonable."

### 2. REASONABLENESS OF FEES

In *Hensley v. Eckerhart*, the Supreme Court set forth the process a district court must follow when determining whether fee awards are reasonable in cases where the prevailing party is only partially successful on all its claims. 461 U.S. at 433; *Natural Resources Defense Council, Inc. v. Winter*, 543 F.3d 1152 (9th Cir. 2008) (citing the rule set forth in *Hensley*). Under *Hensley*,

"[t]he . . . starting point for determining the amount of a reasonable fee" is the lodestar figure, which equals the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. at 433. Where the plaintiff has only achieved limited success on their claims, however, the "district court has discretion to make a downward adjustment to the components or the product of" the lodestar equation. *Schwarz v. Sec'y of Health & Human Serv.*, 73 F.3d 895, 901 (9th Cir. 1995).

In exercising this discretion, a two-part analysis must be followed: *First*, the court asks whether the claims upon which the plaintiff failed to prevail "were related to the plaintiff's successful claims." *Ibid*. If unrelated, the court must "exclude from the calculation . . . all hours spent litigating the unsuccessful claims." *Id*. at 904. In *Hensley*, the Supreme Court recognized that "there is no certain method of determining when claims are 'related' or 'unrelated,'" but that courts have identified several indicia of relatedness. 461 U.S. at 437 n.12. As an example, claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories." *Id.* at 434. In other words, "claims are unrelated when the relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy*, 305 F.3d 943, 956 (9th Cir. 2002) (quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)). On

---

[1] Plaintiffs do not attempt to argue that they are a "prevailing party" with respect to their APA claim. This is unsurprising, in light of the undersigned's dismissal of the claim for lack of subject-matter jurisdiction.

5

the other hand, claims may be related if they "involve a common core of facts or are based on related legal theories." *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005) (internal quotations omitted). Thus, "even if a specific claim fails, the time spent on that claim may be compensable, in full or in part, if it contributes to the success of other claims." *Commnity Ass'n*, 305 F.3d at 956 (quoting *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991)).

*Second*, even if the claims are found to be related, the court may modify the award in light of the degree of success obtained. *Schwarz*, 73 F.3d at 901–902. Here, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. While making this determination, the district court must "provide a . . . clear explanation of its reasons for the fee award." *Id.* at 437. The reason for this is simple: by "giv[ing] at least some indication of how it arrived at the amount of compensable hours for which fees were awarded," the court will "allow for meaningful appellate review." *Schwarz*, 73 F.3d at 906.

A. STEP 1: RELATEDNESS OF CLAIMS

In their complaint, plaintiffs asserted only two claims: a CERCLA claim and an APA claim (Dkt. No. 1). As to the APA claim, the record is clear that the undersigned found that subject-matter jurisdiction was improper in the Northern District of California, and therefore dismissal was necessary (Dkt. No. 67). As to the CERCLA claim, however, it was determined that subject-matter jurisdiction *was* proper, and — following a ruling on the parties' cross-motions for summary judgment — defendant EPA was ordered to publish notice of classes pursuant to Section 108(b) of CERCLA (Dkt. No. 105). After such notice was published, the undersigned then dismissed the remaining portion of plaintiffs' CERCLA claim predicated on the EPA's duty to promulgate and impose financial responsibility regulations, because it was determined that this duty was discretionary rather than nondiscretionary (Dkt. No. 111). 42 U.S.C. 9659(a)(2) (only nondiscretionary duties are actionable under this section).

Mindful of the rule set forth in *Hensley*, defendants concentrate their fire on the dismissed portions of plaintiffs' CERCLA claims and the entirely dismissed APA claim, arguing that they

6

were unrelated to the limited relief plaintiffs obtained in this action (Opp. 7). Plaintiffs, unsurprisingly, contend that everything asserted in their complaint under CERCLA and the APA was related for the purposes of a *Hensley* analysis. These arguments are now addressed in turn.

### i. Section 108(b) of CERCLA

With respect to plaintiffs' CERCLA claim, it is clear that plaintiffs were only successful in obtaining court-ordered relief with respect to one of their three alleged violations under Section 108(b). Defendants contend that these three elements of Section 108(b) — the duty to (1) prioritize, (2) promulgate, and (3) implement regulations governing financial responsibility requirements — are unrelated under *Hensley*, and therefore all work expended by plaintiffs on the unsuccessful elements of this claim are not compensable. This argument must fail. The three elements of Section 108(b) are mandated by a single statutory section, 42 U.S.C. 9608(b)(1), and target a single course of conduct: namely, defendants' duty to adopt financial responsibility regulations. The mere fact that this statutory mandate involves a notice requirement, a promulgation requirement, and an implementation requirement does not make each separate requirement a "distinctly different claim for relief." *Hensley*, 461 U.S. 464 (defining "unrelated" claims). Rather, the three requirements are factually interrelated steps towards achieving a single end. In sum, they are "related" for the purposes of this analysis.

### ii. The APA Claim

As for the short-lived APA claim, defendant EPA first argues that plaintiffs cannot recover fees pertaining to their APA claim unless they first prove "prevailing party" status under the APA (Opp. 7):

> As a threshold matter, Plaintiffs may not rely on CERCLA's fee provision to obtain fees related to the APA claim. Section 310(f) of CERCLA allows fees only for work "brought pursuant to this section[.]" . . . Fee awards for the prosecution of APA claims are instead governed by the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. . . . Plaintiffs can recover fees under EAJA only if . . . the plaintiffs meet the same "prevailing party" standard as that required under CERCLA.

7

To support this contention, the EPA cites to a number of cases, all standing for the proposition that a party cannot be a "prevailing party" for claims that are dismissed on jurisdictional grounds.[2] This argument, however, is unpersuasive in light of the two-part *Hensley* analysis. In fact, if the rule were as defendants contend, there would be no need to perform a relatedness test to determine whether unsuccessful claims should be considered in calculating attorney's fees. On this point, the Supreme Court in *Hensley* clearly explained that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on *any* significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." 461 U.S. at 433 (emphasis added) (quotations omitted). Plaintiffs have achieved such success here under their CERCLA claim. As such, whether time spent on plaintiffs' unsuccessful APA claim should be compensable does not hinge upon whether they are a "prevailing party" under the EAJA — rather, compensability of the APA claim is properly decided under the relatedness prong of the *Hensley* two-part analysis.[3]

Defendant EPA also raises the argument that time spent by plaintiffs on the APA claim cannot be compensable due to the Court's finding that it lacked subject-matter jurisdiction to adjudicate the claim (Dkt. No. 67). In other words, the EPA contends that subject-matter jurisdiction "is a condition precedent to an award of fees," regardless of the rule in *Hensley* (Opp. 4, 8-9). To support this contention, defendant EPA points to *Zambrano v. I.N.S.*, 282 F.3d 1145

---

[2] *See*, *e.g.*, *Klamath Siskiyou Wildlands Ctr. v. BLM*, No. 08-35463, --- F.3d ---, 2009 WL 4798870, at *5 (9th Cir. Dec. 15, 2009) (denying prevailing party status to plaintiff whose case had been dismissed because *all* of its claims had become either unripe or moot); *Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006) (denying prevailing party status to state defendants who successfully defended plaintiff's claims by arguing that the court lacked subject-matter jurisdiction over all claims against them); *Pakootas v. Teck Cominco Metals, Ltd.*, No. CV-04-256-LRS, 2009 WL 1839002, at *6 (E.D. Wash. June 25, 2009) (holding that plaintiffs were not prevailing parties with respect to claims that were dismissed for lack of subject-matter jurisdiction).

[3] The EPA also makes a last-ditch argument that CERCLA's fee-shifting provision, which applies to "any action brought pursuant to this section," abrogates the application of *Hensley* to non-CERCLA claims. This is a toothless argument. For example, in *The Traditional Cat Association, Inc. v. Gilbreath*, the Ninth Circuit applied *Hensley* to determine whether unsuccessful non-copyright claims were properly related to the prevailing party's successful copyright claim. 340 F.3d 829 (9th Cir. 2003). The Copyright Act contains almost identical fee-shifting language as CERCLA, and yet this did not bar application of the *Hensley* relatedness analysis to non-copyright claims.

(9th Cir. 2002), and *Center for Biological Diversity v. Marina Point Development Co.*, 566 F.3d 794, 805 (9th Cir. 2009). Neither case, however, lends compelling weight to this argument.

In *Zambrano*, the Ninth Circuit held that where the *entire* underlying action was dismissed for lack of subject-matter jurisdiction and the decision had become final, the district court lacked jurisdiction to award fees under the EAJA's fee-shifting provision. 282 F.3d at 1150. By contrast, in the instant case, only plaintiffs' APA claim was dismissed for lack of subject-matter jurisdiction. The undersigned still retains subject-matter jurisdiction over plaintiffs' CERCLA claim, and therefore has proper jurisdiction to award fees under its fee-shifting provision. *Zambrano*, therefore, provides no help to the EPA.

The more recent decision cited by defendant also misses the mark. In *Center for Biological Diversity*, the Ninth Circuit reviewed the district court's award of attorney's fees for two claims on which the plaintiff prevailed: a Clean Water Act (CWA) claim and an Endangered Species Act (ESA) claim. 566 F.3d at 805. Both the CWA and ESA contain fee-shifting provisions similar to the one found in CERCLA. Since the plaintiff prevailed on *both* claims, however, the district court did not need to perform the relatedness examination under *Hensley* (Dkt. No. 376, 2:04-CV-07036). The Ninth Circuit, however, reversed the award of attorney's fees for the plaintiffs' CWA claim after determining that the district court lacked subject-matter jurisdiction to entertain the claim in the first place. *Center for Biological Diversity*, 566 F.3d at 805. The award of fees for the plaintiffs' ESA claim, however, was upheld. As such, the Ninth Circuit "vacate[d] the award of attorney fees to the extent that it [was] based upon the CWA and remand[ed] so that the district court [could] determine what portion of the attorney fee award was based upon the ESA[.]" *Id.* at 806–07.

According to defendant EPA, *Center for Biological Diversity* stands for the proposition that fees cannot be awarded *at all* for related claims over which the court lacked subject-matter jurisdiction (Opp. 8–9). This is an overbroad reading of the decision. Rather, the Ninth Circuit merely held that the CWA's *own* fee-shifting provision could not support an award of attorney's fees, since the district court lacked subject-matter jurisdiction over the underlying CWA claim. On remand, the district court was free to "determine what portion of the attorney fee award was

9

based upon the ESA" and its fee-shifting provision. *Center for Biological Diversity*, 566 F.3d at 806–07. In other words, the district court was free to apply the relatedness inquiry under *Hensley* to determine whether the now-dismissed CWA claim was related to the successful ESA claim.

This brings the order, finally, to the inquiry at hand: whether the APA claim is "related" to plaintiffs' successful CERCLA claim. The undersigned finds that it is. Plaintiffs' APA claim asserted that defendants' failure to comply with Section 108(b) of CERCLA was a violation of Section 706(a) of the APA, since it was "agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. 706(1). As such, it clearly addresses the same conduct targeted by the CERCLA claim — namely, defendants' failure to prioritize, promulgate, and implement regulations governing financial responsibility requirements — using an alternative source of authority from which a court might compel compliance. Under the rule set forth in *Hensley*, the APA claim is undoubtedly "related" to the CERCLA claim because it shares a common core of facts, and because the two claims constitute "related legal theories." *See* 461 U.S. at 435. Indeed, the applicability of the APA claim is predicated upon the violations that form the heart of plaintiffs' CERCLA claim.

In sum, all of the claims brought by plaintiff were related.

B.   STEP TWO: DEGREE OF SUCCESS

A finding that an unsuccessful claim was related to a successful claim does not automatically entitle the prevailing party to a full award. On the contrary, the court is expected to modify the award in light of the degree and significance of success obtained, and give an explanation as to why the award is reasonable. *Schwarz*, 73 F.3d at 901–902; *Hensley*, 461 U.S. at 435, 437. This order will first address plaintiffs' success with respect to their CERCLA claim, followed by plaintiffs' success (or lack thereof) on their APA claim.

1.   *Section 108(b) of CERCLA*

Plaintiffs, having won the battle on relatedness, contend that they should receive full compensation for their time spent litigating the Section 108(b) claim due to their "excellent results" (Br. 6) This order disagrees. Some reduction in fees related to the CERCLA claim is warranted due to plaintiffs' limited success in obtaining complete relief.

Plaintiffs are correct that in situations where "the plaintiff obtained 'excellent results,' full compensation may be appropriate[.]" *Schwarz*, 73 F.3d at 902 (quoting *Thorne*, 802 F.2d at 1141). The quoted proposition, however, continues: "but if only 'partial or limited success' was obtained, full compensation may be excessive." *Ibid.* Defendant EPA argues that plaintiffs did *not* achieve what they most sought from this lawsuit — namely, an order requiring the EPA and DOT to promulgate financial responsibility requirements as a nondiscretionary duty (Opp. 9–10). Indeed, it is undisputed that the extent of judicial relief received by plaintiffs was an order from the undersigned directing the EPA to publish notice in anticipation of what was later found to be a *discretionary* duty to promulgate such regulations. Plaintiffs, on the other hand, contend that while this Court could not order the EPA to promulgate regulations, plaintiffs have "forced" a complete change of the EPA's position by requiring them to take the first of three steps under Section 108(b) (Br. 6–7). Moreover, since their APA claim was dismissed without prejudice, plaintiffs contend that this allowed them to bring suit to enforce compliance with the remaining two duties in the Court of Appeals for the District of Columbia Circuit (Reply 6–7).

Plaintiffs' arguments are neither persuasive nor the law. Indeed, plaintiffs cite no legal authority for the proposition that the "overall result" of the litigation is the key consideration when determining whether unsuccessful related claims should be fully compensable. While defendant EPA overreaches by characterizing their avowal to promulgate regulations as a "gratuitous act," they are correct that "excellent results" are predicated upon relief that is legally enforceable, such as a judicial order, or judgment entered upon settlement. *See, e.g., NRDC v. Winter*, 543 F.3d 1152, 1163 (9th Cir. 2008) (finding that the "excellent result" was the attainment of the TRO, which forced the Navy to settle). Nevertheless, where claims are related, "the district court should focus on the *significance* of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," and should not resort to a simple ratio of successful to unsuccessful claims. *Hensley*, 461 U.S. at 435 n. 11. Part of this consideration may involve examining "the public purpose the plaintiff's litigation served." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) (internal quotations and citations omitted).

11

On this particular issue, the undersigned finds that plaintiffs have provided a clear benefit to the public by forcing the EPA to comply with a statutory provision aimed at protecting the environment. Despite this finding, however, plaintiffs simply cannot be said to have achieved "excellent results" under the standard set forth in *Schwarz*, because plaintiffs' only *legally enforceable* victory was requiring the EPA to publish notice of facilities that will be subject to regulation. Given plaintiffs' overarching goal of requiring the EPA and DOT to promulgate financial assurances regulations, plaintiffs have obtained only limited success. While it is true that the EPA has, by voluntary act, acknowledged its need to issue such regulations and plaintiffs still retain a cause of action under the APA, these considerations are not relevant to determining plaintiffs' degree of success. Accordingly, the undersigned concludes that a reduction in awarded fees is warranted to account for the unsuccessful elements of plaintiffs' CERCLA claim. In determining an appropriate reduction, the Court recognizes that the three elements of plaintiffs' CERCLA claim were closely related, and that plaintiffs' efforts on the claim *as a whole* largely contributed to their success with respect to the relief they obtained. As such, the undersigned hereby reduces plaintiffs' merits fees attributed to its CERCLA claim by 33%.[4]

   2.   *The APA Claim*

It cannot be reasonably disputed that the work performed on plaintiffs' APA claim is considerably less significant to the relief they obtained than the hours invested in unsuccessful portions of their CERCLA claim. Indeed, in their reply brief, plaintiffs concede that all of the work performed on the APA claim was in response to defendants' motion to dismiss (Reply 3). Considering that the sole purpose of plaintiffs' APA claim was to provide an additional source of jurisdiction, and that plaintiffs' successful CERCLA claim was in no way aided by this failed jurisdictional argument, any work attributable to this failed APA claim should be significantly discounted due to its minimal significance to the overall relief obtained. To award otherwise would be unreasonable under *Hensley*. Accordingly, plaintiffs' merits fees associated with its APA claim will be reduced by 75%.

---

[4] As will be explained shortly, exact fee amounts will be calculated pursuant to the procedure set forth later in this order. Once this fee amount is determined — which may involve the assistance of a special master — the 33% reduction will be applied.

12

C. ADDITIONAL FEE-RELATED ISSUES

In arguing the reasonableness of plaintiffs' requested attorney's fees and costs, defendant EPA raises a number of specific challenges to plaintiffs' motion: (1) reasonableness of fees-on-fees; (2) reasonableness of litigation costs; and (3) whether plaintiffs can charge the government for time spent litigating issues *not* raised by the EPA, such as time spent by plaintiffs to establish standing. These issues are addressed in turn.

*1. Compensability of Fees-on-Fees*

"In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) (quoting *In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985)). In this light, the EPA does not dispute that plaintiffs are entitled to such fees; rather, the EPA argues only that fees-on-fees should be reduced by an appropriate percentage to reflect plaintiffs' overall success in this case (Opp. 14).

In accounting for the attorney's fees associated with arguing a motion for attorney's fees, the Ninth Circuit has consistently held that "the district court does not abuse its discretion by applying the same percentage of merits fees ultimately recovered to determine the proper amount of the fees-on-fees award." *Schwarz*, 73 F.3d at 909. In *Schwarz*, the Ninth Circuit upheld a 50% award of fees-on-fees where the plaintiff only obtained 25% of its requested merits award, noting that "a district court can apply a percentage formula to reduce the fees-on-fees requested without providing an additional explanation for its actions, since it already has provided [an] explanation of its reasons for the [merits] fee award." *Ibid.* (second alteration in original). In light of the reduction of fees already determined by this order, plaintiffs will be awarded 50% of it's requested fees-on-fees — a reasonable amount considering that the majority of plaintiffs' attorney's fees will be attributable to its CERCLA claim.

On this issue, defendant EPA makes a separate argument pertaining to a Rule 68 offer of judgment it served on plaintiffs on December 4, 2009, in hopes of settling plaintiffs' claims for attorney's fees, costs, and expenses incurred in this action (Opp. 14). The EPA asks the court to *exclude* in the total fee award any fees or costs incurred by plaintiffs after service of this Rule 68

13

settlement offer was made. To support this request, the EPA cites *Marek v. Chesny*, 471 U.S. 1 (1985), which held that in situations where a Rule 68 offer is declined, and the offeree ultimately obtains *less than* the amount offered by the offeror, the offeree must pay for any "costs" incurred after the offer was made. *Marek*, however, did not involve a situation where the Rule 68 offer was directed towards a dispute over attorney's fees and costs. Regardless, it is ultimately premature at this point to exclude any portion of fees-on-fees from the initial calculation of reasonable fees. If, after the final dollar amount is ascertained, the situation in *Marek* applies, then this issue will be revisited appropriately.

### 2. *Compensability of Costs*

Plaintiffs did not submit their costs in strict compliance with the Civil Local Rules of this district. As such, the various disputes between the parties over portions of plaintiffs' cost entries need not be addressed at this time. Plaintiffs will be required, as explained by the procedures set forth below, to recalculate and submit their costs in compliance with Civil Local Rule 54.

### 3. *Time Spent by Plaintiffs to Establish Standing*

The EPA argues that plaintiffs cannot charge the government for time spent on standing issues raised by defendant-intervenors, because the EPA did not join this challenge. Moreover, the EPA objects to the compensation of fees related to claims brought against defendant DOT.

While the undersigned agrees with the EPA on these two issues, based upon plaintiffs' statements in their opening brief, there does not appear to be any disagreement on points. Indeed, plaintiffs clearly assert that they "removed any time spent on arguments advanced by defendant-intervenors" as well as any "time spent on defendant Department of Transportation" (Br. 8; Hasselman Decl. ¶¶ 6–7). The undersigned, therefore, expects that the attorney's fees declaration submitted by plaintiffs in accordance with the procedures below will properly reflect these assertions. If any disputes remain, they will be handled in accordance with the procedures set forth in this order.

### III. PROCEDURE FOR DETERMINING REASONABLE ATTORNEY'S FEES AND COSTS

In light of the rulings above, plaintiffs are hereby ordered to resubmit their declaration of attorney's fees and costs pursuant to the procedures set forth below. Based upon the documents

14

submitted with this motion, much of this work has already been done. Plaintiffs, however, must use this opportunity to correct any errors in their fee request (such as those admitted by plaintiffs in their reply brief), and ensure that their fee declaration conforms with the rulings in this order.

1. No later than **JANUARY 28, 2010**, plaintiffs' attorneys must file and serve a detailed declaration, organized by discrete projects, breaking down all attorney and intern time sought to be recovered. For each project, there must be a detailed description of the work, giving the date, hours expended, attorney (or intern) name, and task for each work entry, in chronological order. A "project" means a deposition, a motion, a witness interview, and so forth. It does not mean generalized statements like "trial preparation" or "attended trial." It includes discrete items like "prepare supplemental trial brief on issue X." Plaintiffs should segregate "fees-on-fees" as a separate project, in case the Rule 68 issue referenced in this order needs to be revisited. The following is an example of time collected by a project.

PROJECT: ABC DEPOSITION (2 DAYS IN FRESNO)

| Date | Time-keeper | Description | Hours x | Rate = | Fee |
|---|---|---|---|---|---|
| 01-08-01 | XYZ | Assemble and photocopy exhibits for use in deposition. | 2.0 | $100 | $200 |
| 01-09-01 | RST | Review evidence and prepare to examine ABC at deposition. | 4.5 | $200 | $900 |
| 01-10-01 | XYZ | Research issue of work-product privilege asserted by deponent. | 1.5 | $100 | $150 |
| 01-11-01 | RST | Prepare for and take deposition. | 8.5 | $200 | $1700 |
| 01-12-01 | RST | Prepare for and take deposition. | 7.0 | $200 | $1400 |
| | Project Total: | | 23.5 | | $4350 |

2. All entries for a given project must be presented chronologically one after the other, *i.e.*, uninterrupted by other projects, so that the timeline for each project can be readily grasped. Entries can be rounded to the nearest quarter-hour and should be net of write-down for inefficiency or other cause. Please show the sub-totals for hours and fees per project, as in the example above, and show grand totals for all projects combined at the end. Include only entries for which compensation is sought, *i.e.*, after application of "billing judgment." For *each entry*,

15

the declaration must further state whether the work pertained to plaintiffs' CERCLA or APA claim (this step is not shown above). If certain entries pertained to *both* claims, then the attribution of hours between the two claims should be 50/50. For each project, the total fees attributable to plaintiffs CERCLA and APA claims should also be provided as sub-totals. Grand totals should also be broken down by CERCLA and APA claims.

3. A separate summary chart of total time and fees sought per individual timekeeper (not broken down by project) should also be shown at the end of the declaration. This cross-tabulation will help illuminate all timekeepers' respective workloads and roles in the overall case. These charts should also indicate whether individual work entries pertained to plaintiffs' CERCLA or APA claim (or, if both, a 50/50 allocation) as described in the prior section, and include totals for each claim. This will help ensure that the totals for both claims balance.

4. The declaration must also set forth (a) the qualifications, experience and role of each attorney or intern for whom fees are sought; (b) the normal rate ordinarily charged for each in the relevant time period; (c) how the rates were comparable to prevailing rates in the community for like-skilled professionals; and (d) proof that "billing judgment" was exercised. While the parties have stipulated as to the rates for plaintiffs' attorneys and interns, the rates must still be justified in the declaration. On the issue of "billing judgment," as before, the declaration should describe adjustments made to eliminate duplication, excess, associate-turnover expense, and so forth. These adjustments need not be itemized but totals for the amount deleted *per timekeeper* should be stated. The declaration must identify the records used to compile the entries and, specifically, state whether and the extent to which the records were contemporaneous versus retroactively prepared. It must state the extent to which any entries include estimates (and what any estimates were based on). Estimates and/or use of retroactively-made records may or may not be allowed, depending on the facts and circumstances.

5. Ordinarily, no more than one attorney and one paralegal need be present at a deposition; more will normally be deemed excessive. Ordinarily, no more than one attorney need attend a law-and-motion hearing; more will normally be deemed excessive. To allow for symmetry, however, the award will take into account the staffing used by the opposing party.

6. If the opposing party doubts the accuracy of the declaration, then the moving party must immediately produce the original underlying time records for inspection upon request. The opposing party must then file and serve any opposition. In this case, the opposition will be due **FOURTEEN CALENDAR DAYS** after plaintiffs' detailed declaration is filed pursuant to these procedures. If the opposing party contends that any item or project was excessive, then the opposition must explain why and provide a declaration setting forth completely all time expended by the opposing party on the same and on similar projects, in the same format described above, so that symmetry may be considered, making available the underlying records for inspection if requested. If any billing *rates* are challenged, then the opposition must state the billing rates charged to the opposing party for all professionals representing the opposing party in the case and their experience levels.[5] If the opposing party challenges specific entries in specific projects, the opposing declaration must provide revised totals for the challenged project, and explain — for each challenged entry — why the fees should not be awarded as requested.

7. The opposing submissions may not simply attack the numbers in the application. It must also set forth a counter-analysis. The counter-analysis should be in the same format required of the applicant, arriving at a final number. The opposition must clearly identify each line item in the application challenged as excessive, improper or otherwise unrecoverable and explain why. The opposition, for example, may annotate (legible handwriting will be acceptable) the applicant's declaration to isolate the precise numbers at issue.

8. With the benefit of both sides' filings, representatives of the parties with final decision authority shall meet *in person* and confer to try to resolve all differences as to the amount. If no agreement is reached, the moving party must file and serve a declaration showing full compliance with this paragraph, explaining when, where and who met, their decision authority, how long they met, what documents were reviewed together, and the principal points of disagreement. This must be done within **28 CALENDAR DAYS** of the filing of movant's detailed declaration.

---

[5] Since the parties have stipulated as to these billing rates, this should not be an issue.

17

9. If no agreement is reached, a special master shall be appointed. If the parties cannot agree on a special master, then the Court shall select a special master. The parties must so advise the Court on this within **28 CALENDAR DAYS** of the filing of movant's detailed declaration.

10. The special master shall have all the powers set forth in FRCP 53(c) and FRCP 54(d)(2)(D). The parties shall provide the special master with copies of all motion papers and other documents relevant to this dispute. The special master shall review the briefs and declarations by the parties on the pending motion, hear argument, and then determine a reasonable amount to award, including any fees-on-fees. The special master shall also determine the extent to which any discovery should be permitted — with the caution that further discovery should be the exception and not the rule. The special master shall then prepare and file a report on recommended findings and amount. The special master, however, should *not* consider or apply the percentage reductions set forth in this order when determining reasonable fee amounts for plaintiffs' CERCLA and APA claims. Reductions to plaintiffs' merits fees will be applied *after* the special master has determined the amount of fees attributable to plaintiffs' CERCLA and APA claims.

11. Absent any supplementation allowed by the special master, the foregoing submissions (together with the briefs already filed) shall be the entire record for the motion. There will be no replies unless allowed later by the special master. Any further submissions for the special master's use should not be filed with the Court. If objections are later made to the special master's report, the objecting party must file a declaration submitting to the Court a complete appendix of relevant communications with the special master.

12. The Court will allocate the fees of the special master in a fair and reasonable manner, taking into account the reasonableness of the parties' respective positions and the special master's recommendation in this regard. If the movant must pay, then the special master's compensation shall be *deducted* from the attorney's fee award. If the opposing party must pay the special master, then it shall pay the special master *and* pay the award. The Court will, however, reserve final judgment on allocation of the expense of the special master until a final determination of the fee issue. A final award shall then be entered.

13. Costs will be determined in *strict compliance* with the local rules. If a review is sought regarding taxable costs, then the issue may also be referred to a special master (or may not). For the purposes of determining the deadline set forth in Civil Local Rule 54-1(a), this order shall constitute the "order under which costs may be claimed."

## CONCLUSION

For the reasons set forth above, plaintiffs' entitlement to attorney's fees and costs is hereby **GRANTED**. Since neither party contacted the Court to preserve oral argument, the hearing on this motion scheduled for January 14, 2010, is **VACATED.** Both parties are ordered to proceed based upon the procedures set forth above.

**IT IS SO ORDERED.**

Dated: January 12, 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE